UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

JOHN FITZGERALD HANSON,

       PETITIONER,

                                           Case No.

v.

GENTNER DRUMMOND, Attorney
General of the State of Oklahoma;

                                          Judge

DANON COLBERT, Acting Regional            Magistrate Judge
Director, U.S. Department of Justice,
Federal Bureau of Prisons;

WILLIAM W. LOTHROP, Acting              **CAPITAL CASE**
Director, U.S. Department of Justice,
Federal Bureau of Prisons; and

HOWARD K. GOLDEY, Warden,
United States Penitentiary Pollock,
Federal Bureau of Prisons,

       RESPONDENTS.

## COMPLAINT FOR DECLARATORY RELIEF OR IN THE ALTERNATIVE A TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION

TRICIA RUSSELL, Arkansas BA # 2020232
Assistant Federal Public Defender
Western District of Oklahoma
Capital Habeas Unit
215 Dean A. McGee, Suite 707
Oklahoma City, OK 73102
(405) 609-5975 (phone)
(405) 609-5976 (fax)
E-mail: Tricia_Russell@fd.org

COUNSEL FOR PETITIONER,
JOHN FITZGERALD HANSON

## **TABLE OF CONTENTS**

JURISDICTION AND VENUE ..................................................................1

PARTIES ...........................................................................................2

BACKGROUND..................................................................................... 2

FIRST CAUSE OF ACTION ...................................................................5

SECOND CAUSE OF ACTION ...............................................................6

THIRD CAUSE OF ACTION....................................................................7

PRAYER FOR RELIEF ........................................................................14

CERTIFICATE OF SERVICE .................................................................16

## TABLE OF AUTHORITIES

<u>SUPREME COURT CASES</u>

*Barnhart v. Sigmon Coal Co.*, 534 U.S. 438 (2002) ……………………………………14

*Corley v. United States*, 556 U.S. 303 (2009) ……………………………………..12

*Hanson v. Oklahoma*, 558 U.S. 1081 (2009) ……………………………………….3

*Hanson v. Sherrod*, 578 U.S. 979 (2016) ……………………………………...4

*Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718 (2017) ……………………14

*Hibbs v. Winn*, 542 U.S. 88 (2004) ……………………………………………12

*Ex Parte Kan-Gi-Shun-Ca, (otherwise known as Crow Dog)*, 109 U.S. 556 (1883) …...6

*Keeble v. United States*, 412 U.S. 205 (1973) ……………………………………6

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
     591 U.S. 657 (2020) …………………………………………..9, 13, 14

*Oklahoma v. Castro-Huerta*, 597 U.S. 629 (2022) ………………………………14

*Ponzi v. Fessenden*, 258 U.S. 254 (1922) ………………………………………7

*Rotkiske v. Klemm*, 140 S. Ct. 355 (2019) ………………………………………13

*Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816 (2018) ………………………..12

*Tapia v. United States*, 564 U.S. 319 (2011) ……………………………………..12

*United States v. Johnson*, 529 U.S. 53 (2000) ……………………………………10

<u>FEDERAL CIRCUIT COURT CASES</u>

*Armstrong v. Salinas*, 2014 WL 340399 (E.D. Ky. Jan. 30, 2014) …………………...5

*BNSF Railway Co. v. United States*, 775 F.3d 743 (5th Cir. 2015) ………………….9

*Hanson v. Sherrod*, 797 F.3d 810 (10th Cir. 2015) ………………………………3, 4

*Hanson v. Sherrod*, 2013 WL 3307111 (N.D. Okla. 2013)……………………………….4

*In re DeBerry*, 945 F.3d 943 (5th Cir. 2019) ……………………………………….9

*Mike Hooks Dredging Co. v. Marquette Transp. Gulf-Inland LLC,*
     716 F.3d 886 (5th Cir. 2013) ……………………………………………14

*United States v. Gallaher*, 624 F.3d 934 (9th Cir. 2010) ……………………………...6

*Zerbst v. McPike*, 97 F.2d 253 (5th Cir. 1938) …………………………………..5

## STATE COURT CASES

*Hanson v. State*, 72 P.3d 40 (Okla. Crim. App. 2003) …………………………...3

*Hanson v. State*, 206 P.3d 1020 (Okla. Crim. App. 2009) ……………………………3

*State v. Heisler*, 390 P.2d 846 (Ariz. 1964) …………………………………..9

## FEDERAL STATUTES

18 U.S.C. Appendix 3 ………………………………………………10, 11, 13

18 U.S.C. § 923(g)(7) ………………………………………………………13

18 U.S.C. § 1151(a) …………………………………………………....6

18 U.S.C. § 1153 ……………………………………………………....6

18 U.S.C. § 1966 ………………………………………………………13

18 U.S.C. § 2339B(e)(3) …………………………………………………13

18 U.S.C. § 3006A(a) ………………………………………………....10, 11

18 U.S.C. § 3125(b) ……………………………………………….....13

18 U.S.C. § 3142(f) ……………………………………………………13

18 U.S.C. § 3154(12(B) ……………………………………………….13

18 U.S.C. § 3572(d)(1) ………………………………………………….13

18 U.S.C. § 3593(f) …………………………………………………………..10, 11

18 U.S.C. § 3598 ………………………………………………………………6

18 U.S.C. § 3623 …………………………………………7, 8, 9, 10, 11, 13, 14

18 U.S.C. § 3662(d) …………………………………………………………10, 11

18 U.S.C. § 4085 ……………………………………………………………7

18 U.S.C. § 4102 …………………………………………………………...10

18 U.S.C. § 4104(a) …………………………………………………………10

18 U.S.C. § 5043(b)(2)(B)(i) ………………………………………………13

28 U.S.C. § 1331 …………………………………………………………1

28 U.S.C. § 1346 …………………………………………………………1

28 U.S.C. § 1391 …………………………………………………………2

28 U.S.C. § 1651 …………………………………………………………1

28 U.S.C. § 2201 …………………………………………………………1

28 U.S.C. § 2202 …………………………………………………………1

28 U.S.C. § 2241 …………………………………………………………1

## COMPLAINT FOR DECLARATORY RELIEF OR IN THE ALTERNATIVE A TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION

Petitioner seeks emergency relief from this Court to prevent the Defendants from ending his federal sentence of life imprisonment and transferring him to the State of Oklahoma to be put to death.[1] On January 23, 2025, Oklahoma Attorney General Gentner Drummond requested Mr. Hanson's release and transfer from U.S.P. Pollock to Oklahoma by March 20, 2025. As stated in Defendant Drummond's Letter to Defendant Colbert, Mr. Hanson will "be eligible for the next available execution date," upon his return to Oklahoma.[2]

Petitioner seeks an emergency injunction to prevent his transfer until this Court can determine whether such transfer is lawful and in the public interest. Mr. Hanson has been housed at U.S.P. Pollock since 2006, and Defendants will not be harmed if Mr. Hanson remains at U.S.P. Pollock until the resolution of this matter.

### JURISDICTION AND VENUE

Jurisdiction is proper in this United States District Court under 28 U.S.C. § 1331, 28 U.S.C. § 1346, 28 U.S.C. § 2201, 28 U.S.C. § 2202 and 28 U.S.C. 1343(a).

This Court is authorized to render declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, 28 U.S.C. § 1651, and Rules 57 and 65 of the Federal Rules of Civil Procedure.

---

[1] Mr. Hanson has a death sentence out of Tulsa County, Oklahoma. He is next in line to be executed with a projected execution date of June 2025.
[2] The next execution date in Oklahoma is set for March 20, 2025. The Oklahoma Court of Criminal Appeals has ruled that executions are to be set 90 days apart, which would make Mr. Hanson's date of execution on or around June 21, 2025.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e)(1) because Defendant Goldey and the Plaintiff John Hanson reside in this District.

## PARTIES

1. Petitioner John Hanson, a Louisiana citizen, and a tribal member of the Muscogee (Creek) Nation, is in the physical custody and legal custody of the Bureau of Prisons, residing at USP Pollock, Pollock, Louisiana.

2. Defendant Danon Colbert, in his official capacity, is the Acting Regional Director of the South Central Regional Office of the Federal Bureau of Prisons and is the delegated authority to approve transfers to State Officials. *See* Attachment 1, Drummond Letter, 1/23/25. Director Colbert is a resident of Texas.

3. Defendant Gentner Drummond, in his official capacity, is the Attorney General for the State of Oklahoma. Attorney General Drummond is a resident of Oklahoma.

4. Defendant William W. Lothrop, in his official capacity, is the Acting Director of the U.S. Department of Justice, Bureau of Prisons and is a resident of Washington D.C. *See* Attachment 1.

5. Defendant Howard K. Goldey, in his official capacity, is the Warden of United States Penitentiary Pollock (USP Pollock), and is a resident of Louisiana.

## BACKGROUND

6. John Hanson committed a series of crimes in Oklahoma in August and September of 1999.

7. A federal court tried him under the name George John Hanson. *See* No. 4:99-CR-125 (N.D. Okla.). The crimes at issue included robberies of liquor stores, a bank,

2

and a video store, and possession of a firearm during those robberies. *See id.* After a federal jury convicted him on several counts, the district court sentenced him to life in prison for possession of a firearm after former conviction of a felony, with several lesser sentences for other counts. *See id.*

8.  The federal government currently has Mr. Hanson in custody in USP Pollock, in Louisiana, under the BOP Register Number 08585-062.

9.  An Oklahoma state court tried Mr. Hanson under the name John Fitzgerald Hanson. *See* No. CF-99-4583 (Tulsa Cty. Dist. Ct.). Oklahoma prosecuted Mr. Hanson for carjacking, kidnapping, and two counts of murder. *See Hanson v. Sherrod*, 797 F.3d 810, 853 (10th Cir. 2015). After the Oklahoma jury convicted Mr. Hanson of murder in the first degree, it recommended the death sentence for one of the counts, which the court imposed. *See id.*

10. Mr. Hanson has exhausted all his appeals and post-conviction remedies from his Oklahoma convictions. His direct appeal was resolved in 2009. After his initial conviction, the Oklahoma Court of Criminal Appeals ("OCCA") affirmed his murder convictions but remanded for resentencing due to errors at the penalty phase. *Hanson v. State*, 72 P.3d 40, 45 (Okla. Crim. App. 2003). Following the resentencing hearing, the jury recommended the death penalty for Hanson, which the OCCA ultimately affirmed. *Hanson v. State*, 206 P.3d 1020, 1036 (Okla. Crim. App. 2009). The Supreme Court denied certiorari. *Hanson v. Oklahoma*, 558 U.S. 1081 (2009).

11. Subsequently, Mr. Hanson filed a federal habeas petition with the United States

District Court for the Northern District of Oklahoma, which denied the petition on all grounds. *Hanson v. Sherrod*, 2013 WL 3307111, at *5. This decision was affirmed by the Tenth Circuit, *Hanson v. Sherrod*, 797 F.3d 810, 853 (10th Cir. 2015), and certiorari was denied by the Supreme Court, 578 U.S. 979 (2016).

12. Mr. Hanson unsuccessfully challenged Oklahoma's execution protocol and method of execution under the U.S. Constitution, as part of a group of death row inmates. He lost those claims at summary judgment and at a federal bench trial in 2022. *See* No. 14-CV-665 (W.D. Okla.). The Tenth Circuit affirmed the district court. *See* No. 22-6100 (10th Cir.).

13. After the federal district judge ruled against him, the OCCA scheduled Mr. Hanson's execution. *See* Order Setting Execution Dates, D-2006-126 (Okla. Crim. App. Jul. 1, 2022). The court ordered his sentence be carried out on December 15, 2022. *Id.*

14. In August of 2022, the State of Oklahoma requested that S.R. Grant, former Acting Complex Warden of FCC Pollock, transfer Mr. Hanson from federal custody into state custody to carry out his execution. In October of 2022, Heriberto Tellez, former Regional Director of the South Central Region of the Federal Bureau of Prisons, denied such request, stating "transfer to state authorities for state execution is not in the public interest" because "inmate Hanson is presently subject to a Life term imposed in Federal Court" and because "[i]nmate Hanson is in the primary jurisdiction of federal authorities." *See* Attachment 1, p. 9.

15. On October 25, 2022, the State of Oklahoma filed a Complaint for Declaratory and Injunctive Relief and Petition for Habeas Corpus in which it sought surrender of Mr.

Hanson to state custody. *Oklahoma v. Tellez*, No. 7:22-CV-108-O (N.D. Tex.) (Dkt. 1). Such litigation resulted in the district court dismissing the complaint for lack of jurisdiction. *Id.* (Dkt. 28 at 5).

16. On January 23, 2025, Oklahoma Attorney General Gentner Drummond sent a letter to Danon Colbert, Acting Regional Director of the South Central Region of the Federal Bureau of Prisons, requesting that Mr. Hanson be transferred to state custody "so that he is available for the next execution date." *See* Attachment 1. Mr. Hanson is currently in federal custody, where he has been a model prisoner since 2006.

## FIRST CAUSE OF ACTION

17. Plaintiff realleges and reincorporates all preceding paragraphs. Permitting Mr. Hanson to be removed unlawfully to the wrong sovereign – which will cause his premature death – merits an injunction because it violates federal law.

18. It is well established that the federal government enjoys primary jurisdiction over an individual it "first arrested and imprisoned," and "[can]not without its consent be deprived of his custody until through with him." *Zerbst v. McPike*, 97 F.2d 253, 254 (5th Cir. 1938); *Armstrong v. Salinas*, No. 6:13-cv-179, 2014 WL 340399, at *5 (E.D. Ky. Jan. 30, 2014) (collecting authorities).

19. Mr. Hanson's transfer to Oklahoma would not serve the public interest because it would deprive the federal government of its right to exercise primary jurisdiction over Mr. Hanson and constitute an unwarranted state interference in federal sovereignty.

## SECOND CAUSE OF ACTION

20. Plaintiff realleges and reincorporates all preceding paragraphs.

21. John Hanson is a citizen of the Muscogee (Creek) Nation. *See* Attachment 2, Certificate of Degree of Indian Blood Card.

22. The state crimes for which Mr. Hanson was convicted occurred on the Cherokee Nation Reservation in Oklahoma, which is Indian Country under 18 U.S.C. §1151(a). See Attachment 3, Verifications of Boundaries.

23. The Major Crimes Act ("MCA") mandates exclusive federal jurisdiction over the prosecution of named serious crimes. It was enacted in 18 U.S.C. § 1153(a) in response to the Supreme Court's decision in *Ex Parte Kan-Gi-Shun-Ca (otherwise known as Crow Dog)*, 109 U.S. 556 (1883), which held only the tribe, not a territorial government, had jurisdiction to try an Indian for the murder of another Indian in Indian County. *See also Keeble v. United States*, 412 U.S. 205, 209-10 (1973).

24. Congress eliminated the death penalty for federal prosecutions of Indian defendants under the Major Crimes Act, unless the tribal governing body consented to its imposition for a crime committed on its Indian country. *See* 18 U.S.C.§ 3598; *United States v. Gallaher*, 624 F.3d 934, 936 (9th Cir. 2010). The "tribal option" was an important recognition of tribal sovereignty. *Id*. at 938-39 (finding the tribal option "place[d] Native American tribes on an equal footing with states; they may decide whether or not … first degree murder committed within their

jurisdiction is punishable by death even [when] first degree murders are prosecuted in federal court.") *Id.* at 939. Attachment 4, MCN Letter re death penalty.

25. A decision by the Defendants to release Mr. Hanson to state custody is made against the express wishes of the Cherokee Nation, the Nation on whose reservation the crime was committed, and against the Muscogee (Creek) Nation, the Nation to which Mr. Hanson belongs. The resulting imposition of the death penalty upon release to Oklahoma is a betrayal of a promise made to the Cherokee and Muscogee (Creek) Nations, and it demonstrates a deep disrespect for tribal sovereignty.

### THIRD CAUSE OF ACTION

26. Plaintiff realleges and reincorporates all preceding paragraphs.

27. Prior to the existence of a federal statute, the Supreme Court held that the Attorney General of the United States has "the power and discretion to practice the comity" of transfers from federal to state authority. *Ponzi v. Fessenden*, 258 U.S. 254, 261–62 (1922).

28. In the 1940s, Congress enacted the statute that it ultimately codified as 18 U.S.C. § 4085, which provided for transfer of federal inmates to state custody for a pending indictment or information or to serve existing state felony convictions. *See* 62 Stat. 683, 850 (June 25, 1948). The statute provided that the Attorney General "shall . . . cause such person, prior to his release, to be transferred" on three conditions: (1) upon the request of "the Governor or the executive authority" of the state, (2) "upon the presentation of a certified copy of such indictment, information, or judgment," and (3) "if he finds it in the public interest." *Id.*

29. In the 1980s, Congress repealed the former statute in favor of 18 U.S.C § 3623. *See* Pub. L. 98-473, § 235(a)(1) (setting effective dates). The current statute designates the Director of the Bureau of Prisons to handle transfer requests from states. *See* 18 U.S.C § 3623. The statute provides that the Director "shall order that a prisoner who has been charged in an indictment or information with, or convicted of, a State felony, be transferred to an official detention facility within such State prior to his release from a Federal prison facility. *Id.* It adds three criteria for when this transfer shall occur: "(1) the transfer has been requested by the Governor or other executive authority of the State; (2) the State has presented to the Director a certified copy of the indictment, information, or judgment of conviction; and (3) the Director finds that the transfer would be in the public interest." *Id.*

30. Although the statute gives authority to the BOP Director, the BOP has further delegated that authority. BOP policy provides that "[t]he respective Regional Director is the delegated authority to approve transfers to State officials." BOP Program Statement 5140.35, ¶ 5(b). BOP policy further provides that "[i]f the Regional Director denies the transfer, the Warden must inform the requesting State of the denial and the reason." *Id.* ¶ 7(b).

31. First, § 3623 contains no requirement—much less a "clear and mandatory" command— that BOP transfer a qualifying federal prisoner to State custody on the requesting State's preferred timeline. Instead, the statute provides that BOP "shall" transfer a qualifying prisoner "prior to his release from a Federal prison facility."

18 U.S.C. § 3623.  As there is no prospect of Hanson being released from federal custody in the foreseeable future there can be no transfer.

32. Numerous courts have interpreted this statutory language as codifying the Executive Branch's long-recognized discretionary authority to transfer a federal prisoner to State custody as a matter of comity—not as constraining that authority, as Defendants suggest. *See, e.g., State v. Heisler*, 390 P.2d 846, 848 (Ariz. 1964). This Court should not "impos[e] limits on an agency's discretion" that are "not found in the statute." *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 677-78 (2020).

33. The text and structure of § 3623 require only that a qualifying prisoner be transferred "prior to his release" from federal prison.

34. Statutory interpretation "start[s] with the text." *BNSF Railway Co., v. United States*, 775 F.3d 743, 751 (5th Cir. 2015); *see also In re DeBerry*, 945 F.3d 943, 947 (5th Cir. 2019) ("In matters of statutory interpretation, text is always the alpha.").  The text of § 3623 not only sets forth prerequisites to be met before BOP transfers a federal prisoner to State custody but also specifies *when* such a transfer is to occur: a qualifying prisoner "shall . . . be transferred . . . *prior to his release* from a Federal prison facility." 18 U.S.C. § 3623 (emphasis added).

35. The phrase "prior to" presents no mystery; it means "in advance of" or "before." *See, e.g.*, Prior To, *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/prior%20to. Similarly, "[t]here can be little question about the meaning of the word 'release' in the context of imprisonment"; its "ordinary,

9

commonsense meaning" here "is to be freed from confinement." *United States v. Johnson*, 529 U.S. 53, 57 (2000); *accord* Release, *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/release ("to set free from restraint, confinement, or servitude"). Thus, even if the three statutory conditions for transfer are satisfied, the text of § 3623 requires only that a qualifying federal prisoner be transferred to a State detention facility before he would otherwise be set free. Consistent with the statute's temporal clause, longstanding BOP guidance provides that transfers under § 3623 should occur "within a reasonable period of time before the inmate's release from the Federal sentence, ordinarily within the last 90 days." BOP Program Statement No. 5140.35, § 5(b) (Sept. 12, 2001), https://perma.cc/J6ZG-89H8.

36. Section 3623 is not unusual in providing that a particular action ("Act A") "shall" be taken "prior to" a specified event ("Event B"). *See, e.g.*, 18 U.S.C. §§ 3006A(a), 3593(f), 3662(d), 4104(a); 18 U.S.C. Appendix 3 § 6(a). Although statutes with this structure use the term "shall," they do not require Act A to be taken immediately or promptly; Act A need only be taken *before* Event B—and if Event B never occurs, Act A need not be taken at all.

37. For example, the Attorney General is empowered "to receive custody of offenders . . . on probation who are citizens or nationals of the United States transferred from foreign countries." 18 U.S.C. § 4102. "*Prior to* consenting to the transfer to the United States of an offender who is on probation, the Attorney General *shall*

determine that the appropriate United States district court is willing to undertake the supervision of the offender." *Id.* § 4104(a) (emphasis added).

38. The latter provision does not require that the Attorney General consult with the district court immediately or promptly upon receiving a foreign country's request to transfer an offender to the United States; it requires only that such consultation occur *before* the Attorney General consents to the transfer. If the Attorney General never consents to a given transfer, no consultation is required. As another example, the Classified Information Procedures Act permits the United States to file certain motions "concerning the use, relevance, or admissibility of classified information" in connection with a trial or pretrial proceeding, and provides that when such a motion "is filed prior to the trial or pretrial proceeding, the court *shall* rule *prior to* the commencement of the relevant proceeding." 18 U.S.C. Appendix 3 § 6(a) (emphasis added).

39. This provision does not require an immediate or prompt ruling on the motion— and if the relevant trial or pretrial proceeding is canceled (*e.g.,* because of a plea agreement), the court need not rule on the motion at all. Other examples are in accord. *See, e.g.*, 18 U.S.C. § 3006A(a) (court "shall" supplement adequate-representation plan with provisions for appeal "[p]rior to" approving the plan); *id.* § 3593(f) (court "shall" issue non-discrimination jury instruction "prior to" jury's return of a finding concerning a sentence of death); *id.* § 3662(d) (Attorney General "shall" provide public notice "prior to" issuing regulations concerning conviction records). So too here. Assuming that the statute's use of the term "shall" amounts

11

to a command, any such command would still be qualified by the temporal phrase "prior to his release from a Federal prison facility," 18 U.S.C. § 3623. To the extent that § 3623 constrains BOP's "plenary control" over the placement of federal prisoners, *see Tapia v. United States*, 564 U.S. 319, 331 (2011), the only limitation is on BOP's authority to *release* certain prisoners sought by a State. Where, as here, there is no realistic prospect that the relevant prisoner will be "release[d] from []

Federal prison," the text of the statute does not require BOP to transfer the prisoner to State custody. Plaintiffs' contrary position impermissibly writes the temporal clause out of the statute. Reading the clause as merely descriptive—*i.e.*, as referencing the obvious fact it is impossible to "transfer" a prisoner to State custody *after* he has been set free—would render it inoperative; the statute would have exactly the same meaning with or without the clause. This flouts "one of the most basic interpretive canons, that 'a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.'" *Corley v. United States,* 556 U.S. 303, 314 (2009) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)); *see also, e.g., Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 825 (2018) (applying this canon).

40. The only way to give the temporal clause content—and thus prevent it from being rendered superfluous—is to interpret it as meaning just what it says. Section 3623 does not require BOP to transfer a prisoner immediately or promptly when a State requests the transfer. Rather, it authorizes BOP to transfer the prisoner "prior to [his] *release* from" federal custody, an event that has not occurred here.

41. To impose a transfer "deadline" that is found nowhere in the statutory text violates the "fundamental principle of statutory interpretation that 'absent provision[s] cannot be supplied by the courts.'" *Little Sisters of the Poor*, 591 U.S. at 658 (quoting *Rotkiske v. Klemm*, 140 S. Ct. 355, 360–61 (2019)). The statute does not require BOP to transfer a qualifying prisoner immediately, promptly, or even as soon as the transfer would be in the public interest. Instead—like other federal criminal statutes employing a "shall . . . prior to" structure, *see supra* at 4-, —it gives BOP discretion to transfer the prisoner at any time "prior to his release." 18 U.S.C. § 3623. Reading a time constraint into § 3623(3) would "alter" the statute by "imposing limits on [BOP]'s discretion that are not supported by the text." *Little Sisters of the Poor*, 591 U.S. at 677.

42. "Atextual judicial supplementation is particularly inappropriate when, as here, Congress has shown that it knows how to adopt the omitted language or provision." *Rotkiske*, 589 U.S. at 14. Other federal criminal statutes provide that a particular action "shall" be taken "immediately," *see, e.g.*, 18 U.S.C. §§ 923(g)(7), 1966, 2339B(e)(3), 3125(b), 3142(f), 3154(12)(B), 3572(d)(1), 5043(b)(2)(B)(i), or "shall" be taken "promptly," *see, e.g., id.* §§ 2 art. II(b)–(c), 42(a)(1), 843(e)(2), 925(c), 951(c), 1968(f)(7), 2523(b)(4)(F), 3145(a)–(c), 3149, 3264(b)(2), 4014(b), 4042(c)(2); 18 U.S.C. Appendix 3 § 2. "Congress could have limited [BOP]'s discretion in any number of ways"—including by requiring transfer of a qualifying prisoner "immediately" or "promptly" upon receipt of a request from a State

13

executive authority—"but it chose not to do so." *Cf. Little Sisters of the Poor*, 591 U.S. at 677.

43. Congress instead instructed only that the transfer occur "prior to [the prisoner's] release from a Federal prison facility." 18 U.S.C. § 3623. This Court must "'presume . . .' that 'the legislature says what it means and means what it says.'" *Oklahoma v. Castro-Huerta*, 597 U.S. 629, 641-43 (2022) (quoting *Henson* v. *Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1725 (2017)); *see also Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 461–62 (2002).

44. Because the statutory text is clear, the interpretive inquiry is at an end. *See, e.g.*, *Mike Hooks Dredging Co. v. Marquette Transp. Gulf-Inland, LLC*, 716 F.3d 886, 893 (5th Cir. 2013). The text requires only that BOP transfer a qualifying prisoner "prior to his release from a Federal prison facility," 18 U.S.C. § 3623, and there is currently no prospect of Hanson being released from federal prison. *See* Attachment 4.

**PRAYER FOR RELIEF**

1. Issue an order enjoining Mr. Hanson's transfer to Oklahoma until he has completed his federal sentence;

2. Issue a preliminary and permanent injunction enjoining Mr. Hanson from being transferred under 18 U.S.C. § 3623 to the State of Oklahoma;

3. Or in the alternative, issue an order enjoining Mr. Hanson's transfer until this matter can be fully briefed and resolved by this Court;

4. Issue an order requiring Director Goldey to secure physical custody of Mr. Hanson;

14

5. A declaration that Defendants are unlawfully seeking to transfer Mr. Hanson under

   18 U.S.C. § 3623;

6. Grant such other relief as this Court deems proper and just.

Respectfully submitted,

TRICIA RUSSELL, Arkansas BA # 2020232
Assistant Federal Public Defender
Western District of Oklahoma
Capital Habeas Unit
215 Dean A. McGee, Suite 707
Oklahoma City, OK 73102
(405) 609-5975 (phone)
(405) 609-5976 (fax)
E-mail: Tricia_Russell@fd.org

COUNSEL FOR PETITIONER,
JOHN FITZGERALD HANSON

## Certificate of Service

I hereby certify that on January 29, 2025, I presented the foregoing Complaint for Declaratory Relief or in the Alternative a Temporary Restraining Order/Preliminary Injunction to the Clerk of Court for filing and I hereby certify that I have mailed by United States Postal Service this filing to the following non-CM/ECF participants:

Gentner Drummond
Attorney General
State of Oklahoma
313 N.E. 21st Street
Oklahoma City, OK 73105

Danon Colbert
Acting Regional Director
U.S. Department of Justice
Federal Bureau of Prisons
South Central Regional Office
US Armed Forces Reserve Cmpl
344 Marine Forces Drive
Grand Prairie, Texas 75051

William W. Lothrop
Acting Director
U.S. Department of Justice
Federal Bureau of Prisons
Central Office
320 First St., NW
Washington, DC 20534

Howard K. Goldey, Warden
United States Penitentiary Pollock
1000 Airbase Road
Pollock, LA 71467

_____
Tricia Russell, Assistant Federal Public Defender