# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### ALEXANDRIA DIVISION

| | |
|---|---|
| JOHN FITZGERALD HANSON, | |
| PETITIONER, | |
| v. | No. 1:25-cv-00102-DDD-JPM |
| GENTNER DRUMMON, Attorney General of the State of Oklahoma; | **RESPONSE OF THE UNITED STATES & FEDERAL DEFENDANTS TO PETITIONER'S MOTION FOR EMERGENCY RELIEF & OBJECTION TO THE MAGISTRATE'S REPORT & RECOMMENDATION** |
| DANON COLBERT, Acting Regional Director, U.S. Department of Justice, Federal Bureau of Prisons; | |
| WILLIAM W. LOTHROP, Acting Director, U.S. Department of Justice, Federal Bureau of Prisons; and | |
| HOWARD K. GOLDEY, Warden, United States Penitentiary Pollock, Federal Bureau of Prisons, | |
| RESPONDENTS. | |

## TABLE OF CONTENTS

Table of Authorities ....................................................................................................... iii

Introduction ..................................................................................................................... 1

Background ....................................................................................................................... 2

Argument .......................................................................................................................... 4

      A.      Plaintiff Is Unlikely to Succeed on the Merits. ........................................ 5

            1.      Plaintiff has Not Identified a Waiver of Sovereign Immunity. ................... 5

            2.      Plaintiff's Attack on the Validity of His State Conviction is Cognizable Only Under Habeas Statutes, and Not Here. .......................... 8

            3.      A Decision to Transfer a Federal Prisoner to a State Authority under Section 3623 is not Subject to Judicial Review. ............................. 8

            4.      Plaintiff's Transfer Meets the Statutory Requirements of Section 3623 ........................................................................................................ 12

      B.      Plaintiff Fails to Satisfy the Remaining Factors. .................................. 16

Conclusion ..................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armstrong v. Exceptional Child Center, Inc.*,
   575 U.S. 320 (2015) ........................................................................................................ 13

*Armstrong v Salinas*, Civil Action,
   No. 6:13-179-KKC, 2014 WL 340399 (E.D.K, Jan. 30, 2014)............................................ 14

*Atkinson v. Hanberry*,
   589 F.2d 917 (5th Cir. 1979) .......................................................................................... 11

*Beale v. Blount*,
   462 F.2d 1133 (5th Cir. 1972) ......................................................................................... 8

*Black Fire Fighters Ass'n v. City of Dallas*,
   905 F.2d 63 (5th Cir. 1990) ............................................................................................. 6

*Blue Chip Stamps v. Manor Drug Stores*,
   421 U.S. 723 (1975) ......................................................................................................... 9

*BNSF Railway Co. v. United States*,
   775 F.3d 743 (5th Cir. 2015) .......................................................................................... 15

*Canal Auth. v. Callaway*,
   489 F.2d 567 (5th Cir. 1974) ........................................................................................... 6

*Commonwealth v. McGrath*,
   205 N.E.2d 710 (Mass. 1965)......................................................................................... 12

*Danos v. Jones*,
   652 F.3d 577 (5th Cir. 2011) ............................................................................................ 7

*Delta Commercial Fisheries Ass'n v. Gulf of Mexico Fishery Management Council*,
   364 F.3d 269 ................................................................................................................... 8

*Easom v. US Well Servs., Inc.*,
   37 F.4th 238 (5th Cir. 2022) .......................................................................................... 17

*Harris Cnty. Texas v. MERSCORP Inc.*,
   791 F.3d 545 (5th Cir. 2015) ........................................................................................... 8

*Heck v. Humphrey*,
   512 U.S. 477 (1994) ....................................................................................................... 10

*Hernandez v. Mesa*,
   140 S. Ct. 735 (2020)........................................................................................................ 9

*Holland Am. Ins. Co. v. Succession of Roy*,
   777 F.2d 992 (5th Cir. 1985) ........................................................................................... 6

*Huawei Techs. USA, Inc. v. FCC*,
   2 F.4th 421 (5th Cir. 2021) ............................................................................................ 16

*In re Andrews*,
   236 F. 300 (D. Vt. 1916) ................................................................................................ 10

*In re Sindona*,
   584 F. Supp. 1437 (E.D.N.Y. 1984)................................................................................. 12

*Jobs, Training & Servs., Inc. v. E. Texas Council of Governments*,
   50 F.3d 1318 (5th Cir. 1995) ........................................................................................... 7

*Johnson v. Gill,*
 883 F.3d 756 (9th Cir. 2018) ........................................................ 11

*Konigsberg v. Ciccone,*
 417 F.2d 161 (8th Cir. 1969) ........................................................ 12

*Lalla v. State,*
 463 S.W.2d 797 (Mo. 1971) .......................................................... 12

*McGirt v. Oklahoma,*
 591 U.S. 894, 140 S.Ct. 2452 (2020) ........................................... 10

*Meachum v. Fano,*
 427 U.S. 215 (1976) ...................................................................... 18

*Nken v. Holder,*
 556 U.S. 418 (2009) ...................................................................... 18

*Olim v. Wakinekona,*
 461 U.S. 238 (1983) ...................................................................... 15

*Poland v. Reno,*
 29 F. Supp. 2d 8 (D.D.C. 1998) ..................................................... 12

*Ponzi v. Fessenden,*
 258 U.S. 254 (1922) ...................................................................... 10

*Preiser v. Rodriguez,*
 411 U.S. 475 (1973) ...................................................................... 10

*Richerson v. State,*
 428 P.2d 61 (Idaho 1967) .............................................................. 12

*Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.,*
 99 F.3d 746 (5th Cir. 1996) ............................................................ 8

*St. Tammany Parish, ex rel. Davis v. FEMA,*
 556 F.3d 307 (5th Cir. 2009) .......................................................... 8

*State ex rel. Matloff v. Wallace,*
 497 P.3d 686 (Okla. Crim. App. 2021) ......................................... 10

*State v. Heisler,*
 390 P.2d 846 (Ariz. 1964) ............................................................. 12

*Thomas v. Levi,*
 422 F. Supp. 1027 (E.D. Pa. 1976) ............................................... 12

*Trigg v. Moseley,*
 433 F.2d 364 (10th Cir. 1970) ...................................................... 11

*United States v. Dowdle,*
 217 F.3d 610 (8th Cir. 2000) ........................................................ 18

*United States v. Escajeda,*
 58 F.4th 184 (5th Cir. 2023) ......................................................... 10

*United States v. Hooker,*
 607 F.2d 286 (9th Cir. 1979) ........................................................ 11

*United States v. Warren,*
 610 F.2d 680 (9th Cir. 1980) .......................................................... 3

*Voluntary Purchasing Groups, Inc. v. Reilly,*
 889 F.2d 1380 (5th Cir. 1989) ........................................................ 8

*Weekes v. Fleming,*
 301 F.3d 1175 (10th Cir. 2002) .................................................... 11

*Wilkerson v. United States*,
    67 F.3d 112 (5th Cir. 1995) ........................................................................... 9
*Wilkins v. State*,
    245 A.2d 80 (Md. Ct. Spec. App. 1968) ........................................................ 12
*Wilkinson v. Dotson*,
    544 U.S. 74 (2005) ...................................................................................... 10
*Zerbst v. McPike*,
    97 F.2d 253 (5th Cir. 1938) ......................................................................... 10

Statutes

18 U.S.C. § 3622 ......................................................................................... 16
18 U.S.C. § 3623 ........................................................................................... 3
18 U.S.C. § 3623(3) ..................................................................................... 14
18 U.S.C. § 3625 ........................................................................................... 8
18 U.S.C. § 3626 ........................................................................................... 8
18 U.S.C. § 4085 ......................................................................................... 11
18 U.S.C. §§ 733, 733a, 733b (1940) ........................................................... 11
21 U.S.C. § 823(d) ...................................................................................... 17
21 U.S.C. § 958 ........................................................................................... 17
28 U.S.C. § 509 ........................................................................................... 15
28 U.S.C. § 636(b)(1)(A) ............................................................................... 6
28 U.S.C. § 1331 ........................................................................................... 8
28 U.S.C. § 1343(a) ....................................................................................... 8
28 U.S.C. § 1346 ........................................................................................... 8
28 U.S.C. §§ 2201–02 .................................................................................... 8
49 U.S.C. § 40101 ....................................................................................... 17
Pub. L. No. 98-473 ...................................................................................... 11
U.S.C. § 3623 ............................................................................................... 6

Rules

Fed. R. Civ. P. 5(b)(2) .................................................................................. 20

Other Authorities

Pub. L. No. 76-503 ...................................................................................... 11
Pub. L. No. 80-772 ...................................................................................... 11

**INTRODUCTION**

George John Hanson (Plaintiff) is currently serving a term of life followed by a consecutive sentence of 1,584 months in federal custody for armed robbery and related firearms crimes. But he has also received a sentence of death in the State of Oklahoma for violently murdering a 77-year-old woman. Plaintiff now seeks to block the Federal Bureau of Prisons (BOP) from transferring him, pursuant to 18 U.S.C. § 3623, to Oklahoma authorities who intend to carry out his lawful sentence by filing an *ex parte* request for a temporary restraining order (TRO). Providing no notice to the Federal Defendants, and notwithstanding the statutory prohibition that Magistrate Judges lack authority to hear motions for injunctive relief, the Magistrate Judge issued a Report & Recommendation (R&R) to the district court asserting that a TRO should issue. ECF No. 5 at 7–8.

There is no legal basis to adopt the Magistrate's R&R and enter an injunction barring Plaintiff's transfer to the State of Oklahoma. Plaintiff's motion for a TRO should be denied and the Complaint dismissed for four reasons. At the threshold, Plaintiff is obligated to establish this Court's jurisdiction, and he has not identified any applicable waiver of sovereign immunity. Having failed to meet his burden, the Court is obligated to dismiss the complaint for lack of jurisdiction. In addition, his claim attacking the validity of his state conviction is only cognizable if brought under the relevant habeas statutes, and is improper in this forum. Further, transfer decisions of a federal prisoner to a state authority are solely "a matter of comity to be resolved by the executive branches of the two sovereigns." *United States v. Warren*, 610 F.2d 680, 684–85 (9th Cir. 1980). Here, the requested injunction would constitute an unwarranted judicial intrusion into a matter within the exclusive authority of the Executive Branch. Finally, even if some limited review of the transfer decision was allowed, the statutory requirements in 18 U.S.C. § 3623 have plainly been satisfied. Here, Congress has expressly authorized the BOP Director to determine

1

whether to transfer a federal prisoner to the custody of a state authority. *See* 18 U.S.C. § 3623. That statute permits the transfer of any prisoner on request of the State Authority where "the Director [of BOP] finds that the transfer would be in the public interest." *Id.* As permitted by federal statute, the Attorney General of the United States has made this public interest determination. This Court should decline the baseless request to substitute its own assessment of the "public interest" for that of the Federal Defendants.

Accordingly, this Court should reject the R&R, discharge any injunctive order, and dismiss the Complaint for the reasons set out below.

## BACKGROUND

The pertinent facts are relatively straightforward. Plaintiff/Petitioner is federal prisoner John Hanson, over whom the Federal Government has primary jurisdiction. Plaintiff is currently serving a federal life sentence after having been convicted of numerous violent crimes in the Northern District of Oklahoma. He is and at all relevant times has been in custody at a Federal Bureau of Prisons (BOP) facility in Pollock, Louisiana (FCC Pollock).

Plaintiff was first arrested and convicted by federal authorities, and he was thereafter convicted of murder in state court in Oklahoma and sentenced to death. On January 23, 2025, the Attorney General of Oklahoma, Gentner Drummond, requested the Acting Regional Director of the Federal Bureau of Prisons transfer Plaintiff pursuant to 18 U.S.C. § 3623 to the custody of Oklahoma. *See* Exh. 1 (AG Oklahoma Ltr. & Attachments), attached hereto. Attorney General Drummond included a certified copy of the judgment of conviction indicating that Plaintiff was sentenced to death in Oklahoma state court. *Id.* Plaintiff sued the Federal Defendants on January 29, 2025, alleging that the transfer would violate the common law principle of primary jurisdiction, would be an affront to tribal sovereignty, and was not consistent with the federal statute authorizing

the transfer of prisoners to state authorities. Compl. ¶¶ 17–44. Shortly after this lawsuit's inception, Plaintiff moved for an *ex parte* temporary restraining order and preliminary injunction to block his transfer. Without addressing the merits of Plaintiff's claims, the magistrate judge issued an R&R that the District Court grant the motion in part "to the extent it seeks an order prohibiting Plaintiff's transfer to the State of Oklahoma until such time as the parties in opposition may be heard, and the District Judge may conduct additional proceedings in his discretion." R&R, ECF No. 5 at 7–8.

Separately, President Trump issued Executive Order on January 20, 2025 entitled, *Restoring the Death Penalty and Protecting Public Safety*, available at https://www.whitehouse.gov/presidential-actions/2025/01/restoring-the-death-penalty-and-protecting-public-safety/ (Jan. 20, 2025), making clear that "[c]apital punishment is an essential tool for deterring and punishing those who would commit the most heinous crimes and acts of lethal violence against American citizens." *Id.* § 1. Among other things, that Executive Order directs the Attorney General to encourage States to bring State capital charges, evaluate whether certain federal offenders can be charged with State capital crimes, and otherwise take actions to preserve capital punishment in the States. *Id.* §§ 3(b), 3(e), & 4. Shortly after being confirmed, Attorney General of the United States Pam Bondi issued a memorandum for the Acting Director of the Federal Bureau of Prisons regarding the transfer of Plaintiff Hanson. *See* Memo. Att'y Gen. Regarding Transfer, attached as Exh. 2. That memorandum authorizes the transfer of Plaintiff in response to Attorney General Drummond's request noting that capital punishment is "vitally important to preserving public safety, supporting the rule of law, and achieving justice." *Id.* Citing this fact as well as the horrendous suffering caused by Plaintiff, Attorney General Bondi

concluded, as required by 18 U.S.C. § 3623, that Plaintiff's transfer is in the "public interest."[1] *Id.*

## ARGUMENT

As an initial matter, the Magistrate Judge lacked authority to address Plaintiff's motion because of the statutory prohibition on Magistrate Judges hearing motions for injunctive relief. 28 U.S.C. § 636(b)(1)(A) ("a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief."). Even setting that error aside, the Court should reject the Magistrate's R&R and deny Plaintiff's motion because he fails to show any entitlement to temporary or preliminary injunctive relief. Indeed, for the reasons set out below, the Court should dismiss the Complaint entirely.

Plaintiff requests an emergency order prohibiting BOP from transferring him to Oklahoma's custody. First, Plaintiff premises his request for emergency relief on the common law doctrine of "primary jurisdiction" that governs how to deal with a prisoner who has violated the laws of multiple sovereigns. *See* Compl. ¶¶ 17–19. Second, Plaintiff argues that a transfer to Oklahoma for the imposition of a death sentence would be an affront to tribal sovereignty because of his membership in the Muscogee Nation and because the state crimes for which he was sentenced to death occurred on Cherokee reservation lands. *Id.* ¶¶ 20–25. Finally, Plaintiff argues that the federal government cannot transfer him to state custody absent his consent or the expiration of his federal sentence without violating the federal statute governing transfers of federal prisoners to state authorities, 18 U.S.C. § 3623. *Id.* ¶¶ 26–44. Each of these arguments is unavailing.

A temporary restraining order or preliminary injunction is an "extraordinary and drastic remedy." *Canal Auth. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974). As such, it is "not to be

---

[1] Here, Attorney General Bondi determined the public interest supported the transfer, thereby satisfying the statutory conditions of 18 U.S.C. § 3623. *See infra* p. 11-12 & Exh. 2.

granted routinely, but only when the movant, by a clear showing, carries [the] burden of persuasion." *Black Fire Fighters Ass'n v. City of Dallas*, 905 F.2d 63, 65 (5th Cir. 1990) (quoting *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985)). "The four prerequisites are as follows: (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest." *Canal Auth.*, 489 F.2d at 572. A preliminary injunction should be granted only if the movant has "clearly" carried the burden of persuasion on all four of these prerequisites. *Id.* at 573. As explained below, Plaintiff fails to meet his burden to obtain an emergency injunctive order.

## A.    Plaintiff Is Unlikely to Succeed on the Merits.

The Complaint asserts three causes of action, namely that a transfer would violate the doctrine of primary jurisdiction, would be an affront to tribal sovereignty, and would violate the statute governing transfers of federal prisoners to state authorities, 18 U.S.C. § 3623. (*See* Compl. ¶¶ 17–44; *see also* TRO/PI Mot., ECF No. 3 at 3). These arguments fail for at least four separate reasons: (1) the court lacks jurisdiction, as Plaintiff has not cited a waiver of sovereign immunity; (2) his complaint about the impact of tribal sovereignty on his state conviction and sentence of death is cognizable only under the habeas statute; (3) the decision to transfer a federal prisoner to state custody is the exclusive province of the Executive Branch and is not subject to judicial review; and (4) in light of Attorney General Bondi's determination of the public interest, *see* Exh. 2, the statutory requirements of § 3623 have been satisfied.

### 1.    Plaintiff has Not Identified a Waiver of Sovereign Immunity.

In general, a federal court has no subject-matter jurisdiction over claims against the United

States and its officers "unless the government waives its sovereign immunity and consents to suit." *Danos v. Jones*, 652 F.3d 577, 581 (5th Cir. 2011). The Administrative Procedure Act (APA) "effects a broad waiver of sovereign immunity and allows any person adversely affected or aggrieved by [final] agency action to seek judicial review." *Jobs, Training & Servs., Inc. v. E. Texas Council of Governments*, 50 F.3d 1318, 1323 n.3 (5th Cir. 1995) (citing 5 U.S.C. § 702). Plaintiff does not (and could not) invoke the APA's waiver of sovereign immunity here, however, because Congress expressly exempted BOP's prisoner-transfer determinations from the requirements of the APA. *See* 18 U.S.C. § 3625. Plaintiff asserts that this Court has jurisdiction "under 28 U.S.C. § 1331, 28 U.S.C. § 1346, . . . and 28 U.S.C. § 1343(a)." [2] Compl. at 1. But, it is well established that none of these statutes, which only grant subject matter jurisdiction to this Court, also provide a waiver of sovereign immunity. *See, e.g., Delta Commercial Fisheries Ass'n v. Gulf of Mexico Fishery Management Council*, 364 F.3d 269, 274 n. 5 (5th Cir. 2004) (noting Section 1346 does not on its own waive sovereign immunity); *Voluntary Purchasing Groups, Inc. v. Reilly*, 889 F.2d 1380, 1385 (5th Cir. 1989) (similar as to Section 1331); *Beale v. Blount*, 462 F.2d 1133, 1138 (5th Cir. 1972) (similar as to Section 1343). Plaintiff bears the burden of identifying a waiver of sovereign immunity and establishing jurisdiction, *St. Tammany Parish, ex rel. Davis v. FEMA*, 556 F.3d 307, 315 (5th Cir. 2009), and, having identified no such waiver, he has no likelihood of success on the merits.

Although not cited by Plaintiff, the Federal Defendants recognize that Congress has permitted limited lawsuits by prisoners seeking "remedies with respect to prison conditions." 18

---

[2] Plaintiff also cites the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, but that Act "is procedural and does not create an independent private right of action," and does not waive sovereign immunity. *Harris Cnty. Texas v. MERSCORP Inc.*, 791 F.3d 545, 553 (5th Cir. 2015); *see, e.g., Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 752 n.3 (5th Cir. 1996).

U.S.C. § 3626. Assuming arguendo that this would constitute a limited waiver of sovereign immunity, such a waiver must be read narrowly to cover only a qualifying "civil action with respect to prison conditions," *id.* § 3626(a) & (g)(7). It is unclear that such a waiver of sovereign immunity would apply to transfers authorized under a separate section of this Subchapter of Title 18. Transfers permitted under Section 3623 are not expressly mentioned in Section 3626 and indeed the word "transfer" does not appear at all in that Section. Nor is it obvious that a transfer permitted under Section 3623 would meet the definition in 3626(g)(2) of a "civil action with respect to prison conditions." After all, waivers of sovereign immunity are to be strictly construed, *Wilkerson v. United States*, 67 F.3d 112, 118 (5th Cir. 1995), and Plaintiff has made no effort to demonstrate that his causes of action seeking to halt his transfer to Oklahoma are subject to this limited waiver as to "prison conditions."

In light of Congress's explicit decision to shield the BOP's § 3623 decisions from the APA's provisions, *see* 18 U.S.C. § 3625, it would be passing strange to transform that legislative restriction on the unavailability of a cause of action and immunity waiver into a license to use a separate provision of Title 18 regarding "remedies with respect to prison conditions" into a freewheeling permission to scrutinize statutorily authorized transfers of federal prisoners to state authorities. *Cf. Hernandez v. Mesa*, 140 S. Ct. 735, 747 (2020) ("[I]t would be 'anomalous to impute a judicially implied cause of action beyond the bounds Congress has delineated for a comparable express cause of action." (alterations omitted) (quoting *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 736 (1975))). For these reasons, Plaintiff's claims under the doctrine of primary jurisdiction, tribal sovereignty, and his misreading of 18 U.S.C. § 3623 provide no basis to enjoin Plaintiff's transfer to Oklahoma. Since those are the sole bases on which his TRO motion was premised, the Court should deny the Magistrate's R&R and discharge any injunctive order.

7

**2.      Plaintiff's Attack on the Validity of His State Conviction is Cognizable Only Under Habeas Statutes, and Not Here.**

Plaintiff also challenges the validity of his state conviction, arguing that his sentence of death for a state crime violates tribal sovereignty. *See* Compl. ¶¶ 20–25. But this action is not the appropriate forum in which to raise a challenge to his state conviction and sentence of death. Congress has codified specific provisions that allow an inmate to seek post-conviction relief in federal court by challenging the validity of his confinement. *See United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023) (citing 28 U.S.C. §§ 2241, 2244, 2254, 2255). The Supreme Court has "repeatedly held that by codifying these specific provisions, Congress required prisoners to bring their legality-of-custody challenges under [the federal habeas statutes] and prohibited prisoners from bringing such claims" by other means, such as Plaintiff's action here. *Id.* at 186–87 (citing *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005); *Heck v. Humphrey*, 512 U.S. 477, 481–82 (1994); *Preiser v. Rodriguez*, 411 U.S. 475, 486 (1973)). As such, the Court should disregard Plaintiff's argument that his sentence of death is invalid. *See* Compl. ¶¶ 20–25.[3]

**3.      A Decision to Transfer a Federal Prisoner to a State Authority under Section 3623 is not Subject to Judicial Review.**

For well over a century, federal courts have recognized that the Federal Government may waive its sovereign right to exclusive custody over a federal prisoner and transfer the prisoner to a State "as a matter of comity." *See, e.g.*, *Ponzi v. Fessenden*, 258 U.S. 254, 261–62 (1922)

---

[3] In addition, Plaintiff has had an opportunity to challenge the validity of the State of Oklahoma's jurisdiction to prosecute him based on his Indian status and the location of his crimes under *McGirt v. Oklahoma*, 591 U.S. 894, 140 S.Ct. 2452 (2020). *See* Exh. 3, Opinion Denying Successive Application For Capital Post-Conviction Relief, *Hanson v. Oklahoma*, Case No. PCD-2020-611 (Okla. Crim. App. Sept. 9, 2021) (denying Plaintiff's jurisdictional challenge to his conviction based on binding state precedent that *McGirt* "would not be applied retroactively to void a state conviction that was final when *McGirt* was decided") (citing *State ex rel. Matloff v. Wallace*, 497 P.3d 686, 689 (Okla. Crim. App. 2021)).

(expressing "no doubt" that this authority exists); *In re Andrews*, 236 F. 300, 301 (D. Vt. 1916) (describing this principle as "well settled"). In many cases, such a waiver is partial; the Federal Government temporarily "loan[s]" its prisoner to the State, typically for court proceedings, "without a complete surrender of [its] prior jurisdiction over him." *See, e.g.*, *Zerbst v. McPike*, 97 F.2d 253, 254 (5th Cir. 1938). In other circumstances, the Federal Government fully surrenders its superior claim to impose its sentence, permanently transferring the prisoner to State custody, and yielding primary jurisdiction to the State. *See, e.g.*, *Johnson v. Gill*, 883 F.3d 756, 765 (9th Cir. 2018); *cf. Weekes v. Fleming*, 301 F.3d 1175, 1181 (10th Cir. 2002) (Idaho permanently relinquished custody of an inmate to the Federal Government). This longstanding authority to transfer an inmate from one sovereign to another has its origins in the common law and has also been codified in statute.

In 1940, Congress enacted such an express authority—the predecessor statute to § 3623. The statute provided that the Attorney General "shall" cause a federal prisoner to be transferred to a State prison "prior to his release" (1) "upon the request of the Governor or the executive authority of such State;" (2) "upon the presentation of a certified copy of [an] indictment or judgment of conviction" for a state-law felony; (3) "if [the Attorney General] finds it in the public interest to do so." Act of April 30, 1940, Pub. L. No. 76-503, 54 Stat. 175 (originally codified at 18 U.S.C. §§ 733, 733a, 733b (1940)). In 1948, the statute was transferred to 18 U.S.C. § 4085, *see* Pub. L. No. 80-772, 62 Stat. 850 (June 25, 1948), and in 1984 it was transferred (with minor stylistic changes) to § 3623. *See* Pub. L. No. 98-473, 98 Stat. 2008 (Oct. 12, 1984); *see also* S. Rep. No. 98-223 at 140–41 (1983) (noting that the current § 3623 "is derived from [the former] § 4085(a), except that language relating to appropriations is omitted as unnecessary").

The Fifth Circuit, as well as numerous other federal courts, has interpreted § 3623's

predecessor statute as "codify[ing]" the power recognized in *Ponzi*—that is, as congressional affirmation of the common law doctrine that the Attorney General may in her sole discretion waive, in whole or in part, the Federal Government's exclusive, primary jurisdiction over a prisoner wanted by a State. *Atkinson v. Hanberry*, 589 F.2d 917, 919 n.4 (5th Cir. 1979); *see also United States v. Hooker*, 607 F.2d 286, 289 (9th Cir. 1979); *Trigg v. Moseley*, 433 F.2d 364, 367 (10th Cir. 1970); *Konigsberg v. Ciccone*, 417 F.2d 161, 162 (8th Cir. 1969); *In re Sindona*, 584 F. Supp. 1437, 1443 (E.D.N.Y. 1984); *Commonwealth v. McGrath*, 205 N.E.2d 710, 712 & n.2 (Mass. 1965); *State v. Heisler*, 390 P.2d 846, 848 (Ariz. 1964); *Wilkins v. State*, 245 A.2d 80, 83 (Md. Ct. Spec. App. 1968). But the statutory codification "in no way lessened the Attorney General's discretionary power" to grant or deny a State's transfer request. *Heisler*, 390 P.2d at 848; *see also Ciccone*, 417 F.2d at 162; *Wilkins*, 245 A.2d at 83; *Richerson v. State*, 428 P.2d 61, 62 (Idaho 1967); *Lalla v. State*, 463 S.W.2d 797, 799 (Mo. 1971). Federal Defendants are aware of no case concluding that § 3623 limited the Attorney General's or BOP Director's discretion in any fashion.

Numerous cases interpreting § 3623's predecessor—18 U.S.C. § 4085—establish that the opposite is true: Rather than cabining the discretion of the Attorney General or BOP Director, the "public interest" provision codifies the broad discretion that the Supreme Court recognized in *Ponzi*. *See Heisler*, 390 P.2d at 848 (whether to transfer was "wholly a matter for the United States, through its Attorney General to determine" prior to enactment of § 4085, and enactment of statute "in no way lessened the Attorney General's discretionary power"); *Ciccone*, 417 F.2d at 162 ("Under § 4085 the Attorney General has the authority" to transfer federal inmate; "[t]he exercise of this authority is discretionary, however, and the Attorney General need not transfer a prisoner."); *Poland v. Reno*, 29 F. Supp. 2d 8,  10 n.1 (D.D.C. 1998)  (referring to the Attorney General's authority under § 4085 as the unreviewable "discretionary decision to transfer a prisoner");

*Thomas v. Levi*, 422 F. Supp. 1027, 1033 n.20 (E.D. Pa. 1976) (describing § 4085 as "a statute allowing the Attorney General at his discretion to turn over federal prisoners to state authorities"); *see also Lalla*, 463 S.W.2d at 799 (citing § 4085 and explaining that "return of this defendant to Missouri . . . would be purely discretionary with the United States Attorney General").

The legislative history is in accord. The Senate Judiciary Committee report on the Comprehensive Crime Control Act, through which Congress transferred the statute to its current location in the U.S. Code, explained that the "last requirement of public interest places the entire transfer procedure directly within the discretion of the Director of the Bureau of Prisons."  S. Rep. No. 98-225 at 144 (1983). "This granting of discretion to the Director follows closely Section 3621(b) which permits the Bureau to designate the place of the prisoner's confinement, whether or not such place is maintained by the federal government." *Id.*; *see also id.* at 142 (describing the "public interest" provision in § 3623 at the "catch-all clause at the end of the subsection"). Congress insulated BOP's discretionary "public interest" determinations from APA review to "assure that [BOP] is able to make [such decisions] without constant second-guessing." *Id.* at 149.

If anything, Congress's decision to shield transfer decisions from APA review in § 3625 reflects a congressional intent not to allow *any* judicial review of decisions under § 3623. "(The power of federal courts of equity to enjoin unlawful executive action is subject to express and implied statutory limitations." *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 327 (2015). When Congress has excluded or restricted private enforcement of a statute, plaintiffs "cannot, by invoking [a court's] equitable powers, circumvent Congress's" restrictions. *Id.* at 328. The decision whether, and to what extent, the federal government will "waive its strict right to exclusive custody of" a given prisoner over whom the federal government has primary jurisdiction is "solely [within] the discretion of the sovereign[]." *Ponzi*, 258 U.S. at 260. The federal courts

11

have no role to play in this issue. *See Warren*, 610 F.2d at 684–85. Indeed, it is well settled that "[d]etermination of priority of custody and service of sentence between state and federal sovereigns" is "an executive, and not a judicial, function." *Id.*

As a matter of comity, the federal and state governments regularly negotiate sovereign-to-sovereign transfers of primary jurisdiction over a detainee, such that the transferring sovereign yields its right to impose its own sentence on an inmate before a receiving sovereign gets a chance to do so. There is no evidence that Congress sought to permit the federal judiciary a role in that process. Because a decision to transfer a federal prisoner to a state authority is not subject to judicial review, Plaintiff has not demonstrated any likely success on the merits and this Court should therefore deny the Magistrate's R&R.

> **4.    Plaintiff's Transfer Meets the Statutory Requirements of Section 3623.**

Section 3623 provides that, when three enumerated conditions[4] are satisfied, the BOP Director "shall order that a prisoner who has been charged . . . with, or convicted of, a State felony, be transferred to [State custody] prior to his release from a Federal prison facility."  Where all three conditions for transfer to state custody are met, there is no violation of § 3623 unless BOP *releases* the prisoner rather than transferring him.

Here, Attorney General Drummond's January 23, 2025 Letter and transmittal of a certified copy of the judgment of conviction satisfies the first two enumerated conditions. *See* Compl., Exh. 1. Further, Congress has expressly empowered the BOP Director to decide whether to effectuate such transfers, which are to occur only "*if . . . the Director* finds that the transfer would be in the

---

[4] These three conditions are: "(1) the transfer has been requested by the Governor or other executive authority of the State; (2) the State has presented to the Director a certified copy of the indictment, information, or judgment of conviction; and (3) the Director finds that the transfer would be in the public interest."  18 U.S.C. § 3623.

public interest." 18 U.S.C. § 3623(3) (emphasis added). As such, Section 3623 grants the BOP Director exceedingly broad discretion over transfers—similar to the unreviewable discretion he enjoys under § 3621(b). S. Rep. No. 98-223, Sept. 14, 1983, at 141; *see also Armstrong v Salinas*, Civil Action No. 6:13-179-KKC, 2014 WL 340399, at *8 (E.D.K, Jan. 30, 2014)("[A]ll transfers and prison assignment are functions wholly within the discretion of [] BOP.") (citing *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983)). Ultimately, the statutory provision "places the entire transfer procedure directly within the discretion of the Director of the Bureau of Prisons." S. Rep. No. 98-223, Sept. 14, 1983, at 141.

Attorney General Bondi has made the determination that Plaintiff's transfer is in the public interest, *see* Exh. 2, meaning that the third enumerated condition of Section 3623 is also satisfied.[5] *See also* Exh. 4, Reviving the Federal Death Penalty and Lifting the Moratorium on Federal Executions, Memo. Att'y Gen., at 4 (Feb. 5, 2025) (directing the Federal Bureau of Prisons to "work with each state that allows capital punishment to ensure that states have sufficient supplies and resources to impose the death penalty," including "transferring federal inmates with state or local death sentences to the appropriate authorities to carry out those sentences"). As a result, Plaintiff's transfer is permitted under statute and lawful, meaning this Court should deny the Magistrate's R&R and discharge any injunctive order.

Further, the statute's "public interest" standard confers exceedingly broad discretion on the decisionmaker. In interpreting § 3623(3), the Court must "start with the text." *BNSF Railway Co. v. United States*, 775 F.3d 743, 751 (5th Cir. 2015). The text provides that the BOP Director shall

---

[5] Here, Attorney General Bondi made the public interest determination. *See* Exh. 2. As Attorney General, Congress ensured that she is "vested" with the authority to perform and carry out "[a]ll functions of other officers of the Department of Justice and all functions of agencies and employees of the Department of Justice," 28 U.S.C. § 509, such as subordinate officials like the Director of the Bureau of Prisons. *See also id.* § 510.

approve a State's transfer request "if . . . the Director finds that the transfer would be in the public interest." 18 U.S.C. § 3623. The ordinary meaning of the "public interest" means or refers to "[t]he general welfare of a populace considered as warranting recognition and protection" or "[s]omething in which the public as a whole has a stake; esp., an interest that justifies government regulation." Public Interest, *Black's Law Dictionary* (12th ed. 2024); *see also* Public Interest, *Oxford English Dictionary* (Sept. 2007) ("the benefit or advantage of the community as a whole; the public good."). Congress left the term "public interest" particularly open-ended in § 3623. As used in Section 3623, the term "public interest" does not impose any constraint on the decisionmaker's discretion. To the contrary, the term is "both broad and vague"—an "open-textured term" that the Supreme Court has interpreted "expansively." *See, e.g.*, *Huawei Techs. USA, Inc. v. FCC*, 2 F.4th 421, 437-38 (5th Cir. 2021). Unlike neighboring statutes, § 3623 does not enumerate any specific factors for consideration in evaluating the "public interest," leaving it particularly open-ended.

Compare Congress's use of the term in the immediately preceding statutory section, which sets forth the circumstances in which a prisoner may be temporarily released by BOP. Pursuant to § 3622, BOP may temporarily release a prisoner "if such release appears to be consistent with the purpose for which the sentence was imposed" and any relevant policy statements by the United States Sentencing Commission, "if such release otherwise appears to be consistent with the public interest and if there is reasonable cause to believe that a prisoner will honor the trust to be imposed in him, by authorizing him, under prescribed conditions, to . . . visit a designated place" for no more than 30 days for various purposes. 18 U.S.C. § 3622.

The statute then lists five purposes (visiting a dying relative, attending a relative's funeral, obtaining otherwise unavailable medical treatment, contacting a prospective employer, and

14

establishing family or community ties) as well as a catch-all sixth: "engaging in any other significant activity *consistent with the public interest*." *Id.* § 3622(a)(1)-(6) (emphasis added). Perhaps then, in the context of § 3622, Congress's reference to "*other*" activities "consistent with the public interest" indicates that the term "public interest" is to be interpreted in light of the preceding list of five activities. *See id.* (emphasis added); *see also Easom v. US Well Servs., Inc.*, 37 F.4th 238, 243 (5th Cir. 2022) (concluding that a broad term should be read in the context of any examples of that term specifically enumerated in the statutory text). In § 3623, however, Congress offered no limiting guideposts, affording the BOP Director broad latitude to determine whether transfer "would be in the public interest."

Similarly, Congress did not enumerate specific factors for the BOP Director to consider in exercising his discretion to assess whether transfer "would be in the public interest." That omission is noteworthy given that Congress knows how to shape the contours of a public-interest inquiry when it wants to. *See* 21 U.S.C. § 823(d) ("In determining the public interest [in assessing whether to grant manufacturer CSA registration], the following factors shall be considered: (1) maintenance of effective controls against diversion . . . ; (2) compliance with applicable State and local law; (3) promotion of technical advances in the art of manufacturing these substances and the development of new substances; (4) prior conviction record of applicant under Federal or State laws relating to the manufacture, distribution, or dispensing of such substances; (5) past experience in the manufacture of controlled substances . . . ; ; and (6) such other factors as may be relevant to and consistent with the public health and safety."); *see also* 21 U.S.C. § 958 ("In determining the public interest, the factors enumerated in paragraph (1) through (6) of section 823(a) of this title shall be considered."); 49 U.S.C. § 40101 ("[T]he Secretary of Transportation shall consider the following [sixteen factors], among others, as being in the public interest and

consistent with public convenience and necessity . . . ."). These examples demonstrate that, even when Congress provides guidance as to how a public-interest determination should unfold, the inquiry is still a far-reaching one. Where, as here, Congress has not even attempted to cabin the considerations relevant to the public-interest decision, the decisionmaker has even greater discretion. *See, e.g.*, *Huawei*, 2 F.4th at 437-38 (explaining that the term "public interest" is "both broad and vague" and an "open-textured term" that has been interpreted "expansively" by the Supreme Court).

Given that all three enumerated conditions for Plaintiff's transfer to the custody of Oklahoma are clearly met, Plaintiff cannot establish a likelihood of success on the merits. As a result, the Court must reject the Magistrate's R&R, deny Plaintiff's motion for injunctive relief, and discharge any injunctive order that might prohibit Plaintiff's transfer.

### B.     Plaintiff Fails to Satisfy the Remaining Factors.

Where a plaintiff challenges a government policy, the third and fourth elements of the test for preliminary relief "merge" into a single consideration of the "public interest." *See Nken v. Holder*, 556 U.S. 418, 435 (2009). This factor, too, favors the government. It is well settled that "[d]etermination of priority of custody and service of sentence between state and federal sovereigns" is "an executive, and not a judicial, function." *Warren*, 610 F.2d 680, 684; *accord United States v. Dowdle*, 217 F.3d 610, 611 (8th Cir. 2000). The requested injunction would be contrary to the public interest because it would upset the "inviolable rules of comity," *Zerbst*, 97 F.2d at 254, and would potentially "subject to judicial review a wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts," *Meachum v. Fano*, 427 U.S. 215, 225 (1976).

**CONCLUSION**

Plaintiff's motion for emergency relief should be denied and the Court should reject the Magistrate's R&R.

February 12, 2025

Respectfully submitted,

BRETT A. SHUMATE
Acting Assistant Attorney General
Civil Division

ALEXANDER K. HAAS
Director

ANDREW WARDEN
Assistant Director

*/s/ Kevin K Bell*
KEVIN K. BELL
(GA Bar No. 967210)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Phone: (202) 305-8613
E-mail: Kevin.K.Bell@usdoj.gov
*Counsel for the United States*

17

## CERTIFICATE OF SERVICE

On February 12, 2025, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court for the Western District of Louisiana, using the electronic case filing system of the Court. I hereby certify that I have served all parties electronically or by another manner authorized by Fed. R. Civ. P. 5(b)(2).

*/s/ Kevin K. Bell*
KEVIN BELL
(GA Bar No. 967210)
Trial Attorney
