# Exhibit 3

# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JOE DEWAYNE FITZER,** | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| **v.** | )     **Case No. CIV 18-283-RAW-GLJ** |
| | ) |
| **CASEY HAMILTON, Warden,** | ) |
| | ) |
| Respondent. | ) |

## OPINION AND ORDER

This matter is before the Court on Petitioner Joe Dewayne Fitzer's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. (Dkt. 1). Petitioner is a pro se state prisoner in the custody of the Oklahoma Department of Corrections who currently is incarcerated at Great Plains Correctional Center in Hinton, Oklahoma. He is attacking his conviction and 55-year sentence in Okmulgee County District Court Case No. CF-2015-25 for Domestic Assault and Battery, Third Offense, After Conviction of Two Felonies. *See Fitzer v. State*, No. F-2016-230 (Okla. Crim. App. Jan. 4, 2017) (Dkt. 44-1 at 1). He sets forth the following grounds for habeas relief:

I.     [Petitioner's] 55-year sentence should be modified to remedy errors that occurred in the trial's sentencing stage.

II.    The State of Oklahoma lacked jurisdiction to prosecute because the Major Crimes Act gives the federal government exclusive jurisdiction to prosecute crimes against persons committed by Indians in Indian Country.

III.   Petitioner was deprived of the effective assistance of counsel on appeal.

(Dkt. 1 at 5-7).[1]

Respondent alleges Petitioner has not exhausted his state court remedies with respect to any

---

[1] The Court's citations refer to the CM/ECF header pagination.

of the raised grounds for the purpose of federal habeas corpus review, and Respondent expressly does not waive exhaustion. (Dkt. 44 at 31) (citing 28 U.S.C. § 2254(a)(3)). Respondent has submitted the state district court and appellate court records and transcripts for consideration.

**Background**

A review of the trial transcripts shows the following testimony was presented at trial:

On January 30, 2015, Barbara Ehrman was moving from her apartment on the ground floor of a fourplex apartment building in Okmulgee, Oklahoma. (Dkt. 45-4). She already had taken down the curtains and drapes, so she had a clear view out the front window. *Id.* at 33-34. When she stepped to the window to take a coffee break, her attention was drawn to voices she heard outside, and she saw Petitioner dragging Benita Buckley by her neck, hair, and arms. *Id.* at 35-37. Petitioner was cursing, and Ms. Buckley was screaming. *Id.* at 57. It appeared that Ms. Buckley was trying to get off the porch to run away from Petitioner. *Id.* at 37. Petitioner grabbed Ms. Buckley's hair and neck and started beating her head against the cement stairs. *Id.* The weather was freezing, however, Ms. Buckley was barefoot and wearing only a T-shirt and cut-off pants similar to shorts. *Id.* at 38. Ms. Buckley could take "one or two steps," but he would grab her back tightly and never let her go, beating her head "against the sidewalk or whatever was near." *Id.*

Ms. Ehrman called 911 and reported what she was seeing to the police. *Id.* at 40. The recording of the phone call, State's Exhibit No. 1, was played to the jury without objection. *Id.* at 42. Okmulgee County Police Officer William Scott responded to the call and arrived at the scene at approximately 11:53 a.m. *Id.* at 59-62. He observed a White male and an Indian female standing

by the road.  *Id.* at 63.  He later learned it was Petitioner and Benita Buckley, a married couple.[2]  *Id.* at 70.

As he was driving up, Officer Scott saw Petitioner grab Ms. Buckley, turn her around, and shove her back with sufficient force to almost make her fall.  *Id.* at 65.  After she stumbled, the officer jumped out of his patrol car and approached them.  *Id.* at 66.  When Officer Scott told them to stop, Petitioner and Ms. Buckley walked away from him.  *Id.* at 72-73.

Officer Scott confronted them and observed that Ms. Buckley had several lacerations or cuts on both sides of her face.  *Id.* at 67.  There was blood coming from her nostrils and red marks around her neck, which indicated to him that Ms. Buckley recently had been choked.  *Id.*

Ms. Ehrman gave Ms. Buckley some clothing to protect her from the freezing weather.  *Id.* at 43-44.  Ms. Buckley then was able to observe Ms. Buckley's injuries and confirm what the officer saw, including bleeding from her lips and face and visible marks on her neck.  *Id.* at 44-51.

Officer Scott saw no injuries on Petitioner, and Petitioner did not indicate that he had been injured in any way.  *Id.* at 69.  When the officer put wrist restraints on him, Petitioner blurted out, "[W]e fight.  We make up.  We do this all the time.  We're going through counseling for it right now."  *Id.* at 71-72.

During the second stage of trial, Petitioner stipulated to two misdemeanor convictions of Domestic Abuse-Assault and Battery, in Supplemental Information A.  He also stipulated to two felony convictions for Domestic Abuse-Assault and Battery and for Unlawful Possession of a Controlled Drug with Intent to Distribute in Supplemental Information B.  *Id.* at 108-112, 118, 121-

---

[2] In his first application for post-conviction relief, Petitioner described Ms. Buckley as his common-law wife.  (Dkt. 44-6 at 4).

22.

**Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act, federal habeas corpus relief is

proper only when the state court adjudication of a claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by the Supreme Court
of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the
facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

**Ground I: Petitioner's 55-Year Sentence**

Petitioner alleges his 55-year sentence should be modified because of the introduction during

the sentencing phase of Judgment and Sentence documents indicating he previously received

suspended sentences for his prior convictions that were used to enhance his present sentence. (Dkt.

1 at 5; Dkt. 1-1 at 10-13).[3]  Respondent alleges this ground for relief must be rejected, because

Petitioner fails to allege a federal basis for this purely state-law claim.  In addition, Petitioner failed

to exhaust this issue as a federal claim and the claim lacks any clearly established Supreme Court

law.

During the second stage of trial, the State introduced Petitioner's prior Judgments and

Sentences as State's Exhibits Nos. 6-9, which were used to enhance his sentence.  (Dkt. 45-7 at 11-

14, 16-18, 21-23, 27-29).  Petitioner did not object to the admission of the four Judgments and

---

[3] The Court construes Petitioner's pro se pleadings liberally but does not act as his advocate.
*See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.
1991).

Sentences, and in fact, as stated above, he stipulated to all of them. (Dkt. 44-38 at 35-40; Dkt. 45-4 at 108-112, 118, 122). He had three prior convictions for domestic assault and battery. (Dkt. 45-4 at 121). The third domestic abuse conviction in February 2009 was a felony, and in March 2013, he was convicted of possession of a dangerous drug with intent to distribute. *Id.* at 121-22.

Petitioner received the following sentences for these convictions:

(1) for the February 2007 domestic abuse, assault and battery, misdemeanor conviction in Case No. CM-2006-436, "6 months suspended, 90 days to serve," with a fine of $1,130 (State's Exhibit 6; Dkt. 45-7 at 10-14);

(2) for the February 2007 domestic abuse misdemeanor conviction in Case No. CM-2006-536, a fine of $1,704 (State's Exhibit 7; Dkt. 45-7 at 15-18);

(3) for the February 2009 domestic abuse felony conviction in Case No. CF-2008-219, "a term of 2 years with all but the first 6 months suspended" plus a fine of $1,000 (State's Exhibit 8; Dkt. 45-7 at 20-23); and

(4) for the 2013 drug possession felony conviction in Case No. CF-2012-420A, "a term of 10 years with the first 1 year to be served in [the Okmulgee County Criminal Justice Authority] and the balance suspended," with a fine of $1,000. (State's Exhibit 9; Dkt. 45-7 at 26-29).

Notably, the prosecutor never made any mention of the fact that portions of Petitioner's prior sentences had been suspended. Indeed, after admitting the exhibits, the prosecutor made no comments except to announce that the State rested its case. (Dkt. 45-4 at 115). The only argument the prosecutor made based on the exhibits was that they indicated the State had yet to get Petitioner's attention about domestic abuse. (Dkt. 45-4 at 121). Asserting that Petitioner had committed "[v]ery serious crimes," the prosecutor further stated:

[W]hat that tells us is Mr. Fitzer is a chronic abuser, and has a documented history of abusing others that are close to him. These were not one-time things. Oops, I was stupid, I lost my temper, and I did something I shouldn't have done. This is a documented history before you.

And nothing yet has worked.

By his own admission, he said, we're in counseling for it. That didn't work. The State has charged him before.

That didn't work.

What's to keep him from harming another loved one?
. . .

Because you love someone doesn't mean they sign up to be a punching bag. And we know for a fact that people in his life have been just that.

(Dkt. 45-4 at 176-77).

On direct appeal, Petitioner raised Ground I as he raises it to this Court. (Dkt. 44-2 at 7-9). His claim before the state court was based exclusively on state law--in particular, the Oklahoma Court of Criminal Appeal's (OCCA) then-binding line of cases limiting the State's use in the sentencing stage of evidence of prior suspended sentences or of probation or parole. *Id.* at 8-9. In addition to the total lack of citation to any federal case or the Constitution, Petitioner provided absolutely no indication he was attempting to federalize the claim, without so much as a reference to "due process." The only reference to a constitutional right was a repeat of the OCCA's plain-error standard of review that did not even specify if the federal or state constitution was implicated: "Under plain error review, this Court will provide relief if it concludes that the errors were not harmless or that the errors constitute a miscarriage of justice or a substantial violation of a constitutional or statutory right." *Id.* at 7 (citing *McIntosh v. State*, 237 P.3d 800, 803 (Okla. Crim. App. 2010)). The OCCA rejected Petitioner's state-law claim as follows:

6

PROPOSITION. APPELLANT'S 55-YEAR SENTENCE SHOULD BE MODIFIED TO REMEDY ERRORS THAT OCCURRED IN THE TRIAL'S SENTENCING STAGE.

After thorough consideration of this proposition, and the entire record before us on appeal, including the original record, transcripts, and briefs of the parties, we affirm. While the Judgment and Sentence documents offered in the punishment stage of trial did make reference to partially suspended sentences, Appellant did not ask to have this information redacted, so our review is only for plain error. *Mitchell v. State*, 2016 OK CR 21, ¶¶ 29-30, [387 P.3d 934, 945]. The prosecutor never drew attention to the possibility of probation or parole in general, or to the fact that Appellant had received some leniency in the past. "A judgment and sentence which indicates that the defendant received a suspended sentence, *standing alone*, does not constitute plain error." *Stewart v. State*, 2016 OK CR 9, ¶ 17, 372 P.3d 508, 512 (emphasis added). Appellant's sole proposition of error is therefore denied.

*Fitzer v. State*, No. F-2016-230 (Okla. Crim. App. Jan. 4, 2017) (Dkt. 44-1 at 1-2) (emphasis in original).

Respondent alleges Ground I fails as a threshold matter for several reasons. First, habeas review is available only where a petitioner alleges he is imprisoned "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioner, however, makes no such allegation. His habeas petition simply states that his sentence should be "modified" because of sentencing-stage "errors" (Dkt. 1 at 5-6), with no citation to the federal Constitution or even a mention of "due process." He incorporates his direct appeal briefing on this issue, filed with the petition, however as summarized above, that briefing also did not provide any federal basis for this claim. *Id*. at 5 (citing Dkt. 1-1 at 4-13).

"Although [a] pro se petition before the district court is entitled to a liberal construction, we may not rewrite a petition to include claims that were never presented." *Childers v. Crow*, 1 F.4th 792, 798 (10th Cir. 2021) (citation omitted), *cert. denied*, 142 S. Ct. 2718 (2022). Even with a liberal construction, Petitioner cannot be construed as having raised a federal claim in Ground I.

Further, even if Petitioner's pro se habeas petition could be liberally construed as raising a federal claim to this Court, it is questionable whether his identical arguments in a counseled brief before the OCCA fairly presented a federal claim. A habeas petitioner who challenges an evidentiary ruling in state court is not automatically entitled to then claim in habeas proceedings that his due process right to a fair trial was violated by the admitted evidence:

> If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.

*Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam).

Moreover, if a petitioner wishes to exhaust a federal due process claim, the claim must "be fairly presented to the state court, which means that the petitioner has raised the substance of the federal claim in state court." *Grant v. Royal*, 886 F.3d 874, 890 (10th Cir. 2018) (internal quotation marks and citations omitted), *cert. denied*, 139 S.Ct. 925 (2019). [I]t is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court." *Gray v. Netherland*, 518 U.S. 152, 163 (1996); *see also Duncan*, 513 U.S. at 364-366 & n.1 (holding petitioner, who argued in state court that prior-crime evidence was erroneously admitted under state law and asked state court to find error was not harmless under state law, "did not apprise the state court of his claim that the evidentiary ruling of which he complained was not only a violation of state law, but denied him the due process of law guaranteed by the Fourteenth Amendment," and instructing that petitioner's argument that evidence was "irrelevant and inflammatory" and its admission resulted in a "miscarriage of justice" was not sufficient to

8

signal federal claim); *cf. also Rivera v. Illinois*, 556 U.S. 148, 158, 160 (2009).  ("[E]rrors of state law do not automatically become violations of due process" because "[t]he Due Process Clause . . . safeguards not the meticulous observance of state procedural prescriptions, but the fundamental elements of fairness in a criminal trial" (quotation marks omitted)).

Put more generally, "[t]o satisfy exhaustion, . . . the habeas petition's focus--as well as the alleged error that it identifies--cannot depart significantly from what the petitioner had presented to the state court."  *Grant*, 886 F.3d at 891; *cf. Duncan*, 513 U.S. at 366 ("[M]ere similarity of claims is insufficient to exhaust.").

Here, even if Petitioner's claim is liberally construed to raise a federal claim to this court, no such claim was raised to the OCCA.  Instead, Petitioner based his OCCA claim entirely on state law. (Dkt. 44-2 at 8-9).  He did not cite to any federal case or the Constitution or otherwise indicate he was attempting to federalize the case.  Because he did not fairly apprise the OCCA that he was raising a federal claim or give the OCCA a fair opportunity to pass on the claim, any federal claim he now is construed to raise is unexhausted.

Further, any federal version of the unexhausted claim is subject to an anticipatory bar. Petitioner would face an independent and adequate state procedural bar if he were to return to state court and assert a federalized version of Ground I in a subsequent application for post-conviction relief.  Specifically, if Petitioner were to return to state court and present the claim in another post-conviction application and appeal to the OCCA, the OCCA would bar the claim as successive, because Petitioner could have raised it on direct appeal or in any of his prior post-conviction applications and appeals.  *See* Okla. Stat., tit. 22, § 1086 (2021).  The Tenth Circuit has held § 1086 to be independent and adequate.  *Smith v. Workman*, 550 F.3d 1258, 1274 (10th Cir. 2008).

A federal court may not grant relief on a claim defaulted in state court based on an independent and adequate rule "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Here, Petitioner does not acknowledge that any federalized version of his claim is unexhausted, let alone show cause and prejudice or a fundamental miscarriage of justice to overcome his default.

Petitioner makes no arguments that his sentence was not properly enhanced by his prior convictions, that a sentencing jury cannot consider a defendant's prior convictions in arriving at the appropriate sentence and that judgment and sentence documents would have been inadmissible even with the sentencing information redacted, or that the prosecutor made any comment on the suspended sentences. Instead, Petitioner's claim is that the unredacted admission of his judgment and sentence documents in the sentencing stage, standing alone, violated his constitutional rights. Respondent maintains that absolutely no Supreme Court authority supports such a claim. *Cf. Holland v. Allbaugh*, 824 F.3d 1222, 1229 n.2 (10th Cir. 2016) ("We also note that the Ninth Circuit has gone so far as to hold no clearly established Supreme Court law exists with respect to evidentiary claims at all" (citing *Holley v. Yarborough*, 568 F.3d 1091 (9th Cir. 2009)); *Id.*, 568 F.3d at 1101 ("[The Supreme Court] has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ.")

Petitioner bases his claim only on a particular line of OCCA cases that once limited the use of information regarding a defendant's prior sentences in sentencing. OCCA case law, however, is not the relevant "measuring stick . . . Supreme Court law is." *Grant v. Royal*, 886 F.3d 874, 944

10

(10th Cir. 2018).  Further, the OCCA has since overruled the main case relied upon by Petitioner,

*Hunter v. State*, 208 P.3d 931 (Okla. Crim. App. 2009).  Specifically, in *Terrell v. State*, 425 P.3d

399, 401 (Okla. Crim. App. 2018), the OCCA held as follows:

> Appellant claims that the references to suspended sentences in the exhibit and the
> prosecutor's argument violated the holding in *Hunter v. State*, 2009 OK CR 17, 208
> P.3d 931.  Prior to *Hunter*, this Court had recognized that jurors were not to speculate
> on pardon or parole, thus, the parties were prohibited from making an unmistakable
> comment on pardon or parole.  *See Martin v. State*, 1983 OK CR 168, ¶ 22, 674 P.2d
> 37, 41-42; *Starr v. State*, 1979 OK CR 126, ¶¶ 12-13, 602 P.2d 1046, 1049; *Satterlee
> v. State*, 1976 OK CR 88, ¶ 26, 549 P.2d 104, 111; *Bell v. State*, 1962 OK CR 160,
> ¶ 18, 381 P.2d 167, 173.  Without discussion or analysis, *Hunter* expanded this rule
> to prohibit both the introduction of judgment and sentence documents reflecting
> receipt of a suspended sentence and explicit references to probation in opening or
> closing argument.  *Hunter*, 2009 OK CR 17, ¶ 10, 208 P.3d at 933-34.  However, the
> introduction of the judgment and sentence is a proper part of the proof of a former
> felony conviction.  *Camp v. State*, 1983 OK CR 74, ¶¶ 2-3, 664 P.2d 1052, 1053-54.
> Thus, we were forced in *Stewart v. State*, 2016 OK CR 9, ¶ 17, 372 P.3d 508, 512,
> to draw a distinction between unmistakable comments upon probation or parole and
> the instance where the judgment and sentence documents simply reflect receipt of a
> deferred or suspended sentence.
>
> Today, we recognize that the rule announced in *Hunter* is simply unworkable.  Jurors
> are free to consider the relevant proof of a prior conviction including any evidence
> that a defendant previously received probation, suspension, or deferral of a sentence
> and any acceleration or revocation of such a sentence.  *See Honeycutt v. State*, 1967
> OK CR 154, ¶¶ 18-20, 432 P.2d 124, 128 (finding proof of suspension of sentence
> by trial court proper proof of former felony conviction).  The receipt of a probationary
> term may be viewed as supporting both greater and lesser punishment depending on
> the facts of the case.  The jury as a whole can make this determination.
>
> Similarly, counsel should be permitted to discuss the relevant proof of prior
> conviction in closing argument.  This Court has long recognized that both parties are
> afforded wide latitude to discuss the evidence, including reasonable inferences
> therefrom, and make recommendation as to punishment in the second stage of a trial.
> *See Hooks v. State*, 2001 OK CR 1, ¶ 40, 19 P.3d 294, 314 (recognizing parties' wide
> latitude to discuss evidence and reasonable inferences from evidence in second stage
> closing argument); *Jones v. State*, 1988 OK CR 267, ¶ 9, 764 P.2d 914, 917
> (prosecutor's recommendation of life imprisonment found proper where no
> unmistakable reference to possibility of parole); *Van White v. State*, 1999 OK CR 10,
> ¶ 69, 990 P.2d 253, 272 ("[P]rosecution may recommend the punishment to be

11

given."); *Mahorney v. State*, 1983 OK CR 71, ¶ 17, 664 P.2d 1042, 1047 ("On numerous occasions this Court has upheld cases where the prosecutor has recommended sentences to the jury."). Since the jury is free to consider the relevant proof of a prior conviction, both parties are afforded wide latitude to discuss this evidence and make recommendation as to punishment in the second stage of a trial. As *Hunter* is inconsistent with both of these lines of cases, it must be and is overruled.

*Terrell*, 425 P.3d at 401 (paragraph numbering omitted).

Not only has the OCCA overruled *Hunter*, it found that Petitioner's case was distinguishable from *Hunter*, because the prosecutor never drew attention to the suspended sentences. (Dkt. 44-1 at 1-2).

Respondent asserts that while *Terrell* was decided after the OCCA's 2017 opinion in the present case, *Terrell* held that "[j]urors are free to consider the relevant proof of a prior conviction including any evidence that a defendant previously received probation, suspension, or deferral of a sentence and any acceleration or revocation of such a sentence." *Id.* When *Terrell* reached the United States District Court for the Western District of Oklahoma in a § 2254 habeas action, the Magistrate Judge reasoned that *Terrell*'s "reversal of previous case law was, of course, simply a matter of state law unreviewable on federal habeas," and, as to the prosecutor's statements in that case regarding Terrell's prior convictions and sentences, "Mr. Terrell has cited no Supreme Court cases supporting his contention that the prosecutor's statements violated the Due Process Clause." *Terrell v. McCoy*, No. CIV-19-908-F, 2020 WL 8268564, at *5 (W.D. Okla. Dec. 30, 2020) (unpublished) (citation omitted), *report and recommendation adopted*, No. CIV-19-908-F, 2021 WL 261698 (W.D. Okla. Jan. 26, 2021) (unpublished) (agreeing with the report and recommendation's analysis on de novo review). Neither the Western District Magistrate Judge nor the District Judge expressed any reservations about the OCCA's new rule.

Here, the Court finds Petitioner has presented to the OCCA and to this Court a claim based entirely on a state-law rule that is grounded in a line of OCCA cases that has been partially overruled. In addition, Petitioner has cited no Supreme Court case suggesting constitutional error occurred, and the only relevant authority in fact suggests the opposite. Therefore, this claim is not reviewable in habeas proceedings, and Ground I of the petition is denied.

**Ground II: Subject-Matter Jurisdiction**

Petitioner alleges in Ground II of the petition that the State of Oklahoma lacked subject-matter jurisdiction to prosecute him, because the Major Crimes Act, 18 U.S.C. § 1153(a), gave the federal government exclusive jurisdiction to prosecute crimes against persons committed by Indians in Indian Country. Petitioner first raised this claim on December 14, 2017, in a post-conviction application in the state district court, alleging he is a registered member of the Choctaw Indian Nation, and his crime occurred within the Creek Indian Nation. (Dkt. 44-6 at 5). The application was denied on May 15, 2018:

> . . . Defendant fails to allege or provide evidence of tribal affiliation, membership or citizenship. Defendant also fails to allege whether or in which provision the crimes for which he was prosecuted, tried and convicted are enumerated in the Major Crimes Act. The Court further declines to find the ruling in *Murphy v. Royal* [875 F.3d 896 (10th Cir. 2017)] "is not the law in Oklahoma . . ." as all matters in *Murphy* address federal law, federal jurisdiction, and do not involve interpretation of Oklahoma State law. Further, the State fails to cite any authority to advance the proposition that *Murphy* is inapplicable to Oklahoma Post Conviction procedures.
>
> Accordingly, Defendant's Application for Post Conviction Relief and for Evidentiary Hearing is hereby denied.

*Fitzer*, No. CF-2015-15-13 (May 15, 2018) (Dkt. 44-9) (emphasis omitted).

Petitioner appealed the denial to the OCCA in Case No. PC-2018-695 (Dkts. 44-10, 44-11), which declined jurisdiction, rejected tendered motions to supplement the appeal record, and

dismissed the attempted post-conviction appeal on January 8, 2019, for failure to file a timely notice. (Dkt. 44-12 at 3).

On January 31, 2019, Petitioner filed in the Okmulgee County District Court a motion for an out-of-time post-conviction appeal. (Dkt. 44-13). The motion included copies of his Choctaw Nation of Oklahoma Tribal Membership Card and his Bureau of Indian Affairs Certificate of Degree of Indian Blood, both dated August 8, 2018. *Id.* at 15.

On December 27, 2019, the state district court recommended that Petitioner be allowed to file his appeal out of time (Dkt. 44-15), and on April 9, 2020, the OCCA granted Petition's request for an out-of-time post-conviction appeal in Case No. PC-2020-75. (Dkt. 44-18). Petitioner filed a petition in error and a brief in support on May 7, 2020, in Case No. PC-2020-310. (Dkts. 44-19, 44-20). On May 29, 2020, the OCCA affirmed the denial of post-conviction relief, finding that Petitioner's post-conviction application based on *Murphy v. Royal*, 866 F.3d 1164 (10th Cir. 2017), was premature, because a petition for writ of certiorari for *Murphy* was pending in the United States Supreme Court. (Dkt. 44-21).[4]

On July 20, 2020, Petitioner filed in the state district court a pro se second application for post-conviction relief, raising the jurisdiction claim pursuant to *Murphy* and *McGirt v. Oklahoma*,

---

[4] *Murphy* held that Congress had not disestablished the Creek Reservation, therefore the crime at issue occurred in Indian Country as defined in 18 U.S.C. § 1151(a). "Because Mr. Murphy is an Indian and because the crime occurred in Indian country, the federal court has exclusive jurisdiction, [and] Oklahoma lacked jurisdiction. *Murphy*, 866 F.3d at 1233 (citing 18 U.S.C. § 1153(a), *amended and superceded on denial of rehearing en banc by* 875 F.3d 896 (10th Cir. 2017).

591 U.S. 894 (2020) (Dkt. 44-22 at 3),[5] and the State filed a response on October 28, 2020 (Dkt. 44-23).  On April 22, 2021, Petitioner's counsel filed an amended post-conviction application, again presenting the *McGirt* Indian Country claim.  (Dkt. 44-24).  On April 23, 2021, the district court entered an agreed order granting Petitioner's post-conviction application based on lack of jurisdiction and dismissing the convictions in Case Nos. CF-2015-25 and CF-2015-287 (Bail Jumping Conviction).[6]  (Dkt. 44-25).  A handwritten notation at the bottom of the order states, "Stay ordered 30 days 5/26/21 @ 1:30 pm."  *Id.* at 2.  On May 26, 2021, the state district court extended the stay pursuant to *McGirt* until July 28, 2021.  (Dkt. 44-5 at 15).  The state district court docket sheet for this case indicates that on the next day, May 27, 2021, a "motion to stay execution judgment (order)" was filed, however, the docket does not indicate which party made the filing.  (Dkt. 44-5 at 16).

On September 24, 2021, the State of Oklahoma filed a motion to vacate agreed order for post-conviction relief, alleging that pursuant to *State ex rel. Matloff v. Wallace*,  497 P.3d 686, *cert. denied*, __ U.S. __, 142 S.Ct. 757 (2022), *McGirt* could not be applied retroactively to Mr. Fitzer.  (Dkt. 44-26 at 2-3).  On October 27, 2021, the state district court entered an order vacating the April 23, 2021, agreed order and denying post-conviction relief in Case Nos. CF-2015-25 and CF-2015-287.  (Dkt. 44-27).  (Dkt. 44-27).  On January 11, 2022, the state district court docketed a second order vacating agreed order for post-conviction relief and denying application for post-conviction

---

[5] *McGirt* held that  the Creek Reservation in Oklahoma had not been disestablished by Congress and that Mr. McGirt should have been prosecuted in federal court under the Major Crimes Act.

[6] According to the Oklahoma Department of Corrections Offender website at https://okoffender.doc.ok.gov, Petitioner discharged the Bail Jumping sentence on February 9, 2021.  The Court takes judicial notice of the offender website pursuant to Fed. R. Civ. P. 201.  *See Triplet v. Franklin*, 365 F. App'x 86, 92, 2010 WL 409333, at *6  n.8 (10th Cir. Feb. 5, 2010).

relief, although the order stated it was entered on October 27, 2021. (Dkt. 44-28). The second order included Findings of Fact and Conclusions of Law. *Id.*

The record shows that Petitioner's direct appeal, which challenged his 55-year sentence, was affirmed on January 4, 2017, in OCCA Case No. F-2016-230. (Dkt. 33-1). His conviction became final on April 4, 2017, upon expiration of the 90-day period for a certiorari appeal to the United States Supreme Court. *McGirt* was decided more than three years later on July 9, 2020.

Respondent maintains that Ground II does not warrant habeas relief, and the OCCA's refusal to grant relief on Petitioner's *McGirt* claim must not be disturbed. When the Supreme Court decided *McGirt*, it recognized that many state inmates who attempt to seek release under its decision would nonetheless remain in state custody "thanks to well-known state and federal limitations on postconviction review in criminal proceedings." *McGirt*, 140 S. Ct. at 2479. In *Wallace*, the OCCA declined to apply retroactively *McGirt*'s new rule of criminal procedure "in a state post-conviction action to void a final conviction." *Id.* at 497 P.3d at 688.

After examining its own precedent and having sought guidance from federal case law, the OCCA decided in *Wallace* that "[f]or purposes of [its] state law retroactivity analysis, *McGirt*'s holding" was not "substantive." *Id*. at 691. *McGirt*, the OCCA explained, "did not determine whether specific conduct is criminal, or whether a punishment for a class of persons is forbidden by their status," but instead was "procedural" in that it "effectively decided which sovereign must prosecute major crimes committed by or against Indians within" historic Muscogee (Creek) lands. *Id*. The OCCA also held that *McGirt* was "new" in that it "imposed new and different obligations on the state and federal governments" and "it was not dictated by, and indeed, arguably involved controversial innovations upon, Supreme Court precedent," pointing to the reasoned disagreement

16

between the Justices of the Supreme Court. *Id*. at 691-92.

> New rules of criminal procedure generally apply to cases pending on direct appeal when the rule is announced, with no exception for cases where the rule is a clear break with past law. But new rules generally do *not* apply retroactively to convictions that are final, with a few narrow exceptions.

*Id.* at 689 (citations omitted) (emphasis in original).

> *McGirt* was never intended to annul decades of final convictions for crimes that might never be prosecuted in federal court; to free scores of convicted prisoners before their sentences were served; or to allow major crimes committed by, or against, Indians to go unpunished.

*Id.* at 693.

To the extent the OCCA's *Wallace*-based ruling on Petitioner's *McGirt* claim is considered to be the application of a procedural bar, this Court finds it was independent and adequate, and Petitioner has not shown cause and prejudice or a fundamental miscarriage of justice. "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. To be independent, a state procedural rule must rely on state law, rather than federal law, as the basis for the decision. *Id*. at 1145. To be adequate, "a state procedural rule must be 'strictly or regularly followed' and applied 'evenhandedly to all similar claims.'" *Id*. (quoting *Duvall v. Reynolds*, 139 F.3d 768, 796-97 (10th Cir. 1998)).

This Court finds that to the extent the OCCA's ruling is considered to be an adjudication on the merits, it is neither contrary to, or an unreasonable application of, any clearly established Supreme Court law, nor was it based on an unreasonable determination of the facts. *See* 28 U.S.C.

17

§ 2254(d). Petitioner's conviction was final before *McGirt* was decided, and the OCCA has determined that "*McGirt* and our post-*McGirt* decisions recognizing [the Cherokee, Choctaw, and Chickasaw Reservations] shall not apply retroactively to void a conviction that was final when *McGirt* was decided." *Wallace*, 497 P.3d at 689. The Court, therefore, concludes that Ground II of the petition must be denied.

### Ground III: Ineffective Assistance of Appellate Counsel

Petitioner claims in Ground III of the petition that his appellate counsel was ineffective in failing to argue on direct appeal that the State lacked subject-matter jurisdiction. Respondent alleges this claim is unexhausted, or in the alternative, that it fails on the merits. Petitioner does not present any argument concerning this claim in his reply to Respondent's response to the petition. (Dkt. 48).

Petitioner originally raised this claim on December 14, 2017, in his first post-conviction application. (Dkt. 44-6 at 14-16). When the first post-conviction proceeding ultimately reached the OCCA on appeal, on May 29, 2020, the OCCA ruled that both of Petitioner's *Murphy*-based claims-- his freestanding jurisdictional claim and the ineffective assistance of appellate counsel claim for failing to raise the jurisdictional claim--were premature:

> On post-conviction appeal Petitioner argues that as an American Indian and enrolled member of the Choctaw Nation, he cannot be prosecuted for domestic abuse by the State of Oklahoma due to a lack of jurisdiction. He also claims appellate counsel was ineffective for failing to raise this issue on appeal. Petitioner cites to *Murphy v. Royal*, 866 F.3d 1164 (10th Cir. 2017).
>
> In an order filed May 15, 2018, the District Court denied Petitioner's post-conviction application finding the ruling in *Murphy* is not the law in Oklahoma.
>
> The Tenth Circuit order issued November 16, 2017, in *Murphy* granted the unopposed motion to stay the mandate pending the filing of a Petition for Writ of Certiorari in the United States Supreme Court. As a petition for a writ of certiorari was filed in the United States Supreme Court on February 6, 2018, and the matter is,

18

therefore, stayed until the Supreme Court's final disposition, Petitioner's post-conviction application based on the Tenth Circuit's holding in *Murphy* is premature.

Accordingly, the denial of Petitioner's application for post-conviction relief is **AFFIRMED**.

(Dkt. 44-21 at 2) (emphasis in original).

As discussed above, the Supreme Court's *McGirt* decision was issued shortly afterward on July 9, 2020, and the State moved to stay these federal habeas proceedings, arguing Petitioner should be required to return to the state court to give the OCCA a full and fair opportunity to consider Petitioner's jurisdictional claims--plural--post-*McGirt*. ("In this case, due to the supervening change in federal law announced in *McGirt* on July 9, 2020, by the United State [sic] Supreme Court, Petitioner should be required to return to state court to exhaust his *Murphy/McGirt claims* as the OCCA was not given a full and fair opportunity to resolve the *claims*.") (Dkt. 25 at 8) (emphasis on "claims" added).

Upon his return to state court, however, Petitioner raised only his freestanding jurisdiction claim, never giving the OCCA an opportunity to rule on his ineffective assistance of appellate counsel claim post-*McGirt*[7] (*see generally* Dkts. 44-22, 44-34, 44-37). Therefore, Petitioner's ineffective assistance of appellate counsel claim is unexhausted, and Respondent asserts he expressly does not waive exhaustion. *See* 28 U.S.C. § 2254(a)(3). Further, Petitioner has not shown cause and prejudice or a fundamental miscarriage of justice to overcome his default. *See Coleman*, 501 U.S.

---

[7] Respondent concedes that this Court's minute order directing Petitioner to return to state court referred only to a single claim: "Granting Respondent's motion to stay federal habeas proceedings for Petitioner to exhaust his *Murphy* claim in state court in light of the U.S. Supreme Courts [sic] decision in *McGirt v. Oklahoma*. Petitioner is directed to notify the Court within fourteen (14) days after his claim has been exhausted in the Oklahoma Court of Criminal Appeals." (Dkt. 29).

at 750.  As such, because Ground III is unexhausted, it cannot provide Petitioner with habeas relief

or serve as a cause to excuse the default of Ground II.  *See Edwards v. Carpenter*, 529 U.S. 446, 453

(2000) (holding that an ineffective-assistance claim asserted as cause for the procedural default of

another claim can itself be procedurally defaulted, and unless the petitioner can satisfy the cause and

prejudice standard for the procedurally defaulted ineffective assistance of counsel claim, that claim

cannot serve as cause for another procedurally defaulted claim).

Respondent also asserts that Ground III is without merit.  To establish constitutionally

ineffective counsel, Petitioner must show: (1) that his attorney's performance was deficient, and (2)

that the deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687

(1984).  Petitioner bears the burden of proving that counsel's performance was unreasonable, and

this Court "must indulge a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance."  *Id.* at 687, 689.  With respect to prejudice, Petitioner must

demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different."  *Id*. at 694.

Regarding the prejudice standard, the "likelihood of a different result must be substantial,

not just conceivable."  *Richter*, 562 U.S. at 112.  "Counsel's errors must be so serious as to deprive

Petitioner of a fair trial, a trial whose result is reliable."  *Id*. at 104 (citation).  Petitioner need not

show that counsel's actions more likely than not altered the outcome, "but the difference between

*Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters only in

the rarest case."  *Id*. at 111-112 (internal quotation marks omitted).

The same standard applies to claims of ineffective assistance of appellate counsel.  *Smith v.
Robbins*, 528 U.S. 259, 285 (2000).  Therefore, Petitioner must show that appellate counsel's

performance was unreasonable and that he suffered prejudice, that is, that there is a reasonable probability that, had the errors now complained of been raised, the result of his appeal would have been different. *Id*. To determine whether appellate counsel's decision not to raise a particular issue amounts to deficient performance, the Court must evaluate the merits of the omitted claim. *Id*. If the issue was so plainly meritorious that it would have been unreasonable to exclude it, even if the appeal was otherwise strong, then counsel's performance may have been unreasonable. *Id*. If the issue has some merit, but is not so compelling that its exclusion would have been unreasonable, then its merit should be weighed against the rest of the appeal, taking into account the deference that a court must give to any professional judgment on the part of counsel. *Id*. Finally, if the issue is meritless, counsel was not deficient for failing to raise it. *Id*.

"[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim." *Miller v. Mullin*, 354 F.3d 1288, 1298 (10th Cir. 2002) (citation omitted). Instead, an appellate attorney must select out those claims he believes, in light of his professional judgment, have the best chances of success. *See Jones v. Barnes*, 463 U.S. 745, 751-753 (1983). Although the Supreme Court has suggested that "it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim," it has also acknowledged that "it is difficult to demonstrate that counsel was incompetent" in selecting the issues he or she did raise. *Robbins*, 528 U.S. at 288. Only when ignored claims are clearly stronger than those raised will a petitioner be able to prevail. *Id.*

Here, Petitioner has not shown that appellate counsel was ineffective in failing to challenge the States's subject-matter jurisdiction on direct appeal. Petitioner does not allege, let alone show, that he informed counsel of his Indian status. Direct appeal counsel filed his opening brief in June

21

2016, more than a year before the Tenth Circuit's November 2017 *Murphy* decision and years before

the Supreme Court's July 2020 *McGirt* decision.  Although Petitioner's jurisdictional claim was

available long before his direct appeal, the decisions in *Murphy* and *McGirt* were unexpected.  *See*

*McGirt*, 140 S. Ct. at 2499 (Roberts, C.J., dissenting) ("[F]or 113 years, Oklahoma has asserted

jurisdiction over the former Indian Territory on the understanding that it is not a reservation, without

any objection by the Five Tribes until recently . . . .").  *See also Bullock v. Carver*, 297 F.3d 1036,

1052 (10th Cir. 2002) ("When reviewing an ineffective assistance of counsel claim, we must make

every effort 'to eliminate the distorting effects of hindsight, to reconstruct the circumstances of

counsel's challenged conduct and to evaluate the conduct from counsel's perspective at the time.'

. . . Consequently, we have rejected ineffective assistance of counsel claims where a defendant 'faults

his former counsel not for failing to find existing law, but for failing to predict future law' and have

warned 'that clairvoyance is not a required attribute of effective representation.'" (citations

omitted)).

   Precedent at the time of Petitioner's direct appeal actually foreclosed a jurisdictional claim.

The OCCA had declined to hold that the Muscogee Nation Reservation was intact.  *Murphy*, 124

P.3d at 1207-08.  Prior to that ruling, this Court had found that there was "no doubt the historic

territory of the Creek Nation was disestablished as part of the allotment process."  *Murphy v.*

*Sirmons*, 497 F. Supp. 2d 1257, 1290 (E.D. Okla. 2007).  Appellate counsel was not ineffective for

failing to raise a claim that found no support in then-existing precedent and was in fact foreclosed

by precedent.  *See Toledo v. United States*, 581 F.3d 678, 681 (8th Cir. 2009) (holding that

sentencing counsel reasonably declined to pursue objections that had no support in the law at the

time of sentencing, and although the Supreme Court issued an intervening decision that changed the

22

law, "sentencing counsel's performance was not constitutionally deficient for failure to anticipate future changes in the law").

Here, appellate counsel reasonably declined to raise a claim not supported by precedent, and counsel did not prejudice Petitioner in not raising a claim that would have been denied. The *McGirt* ruling was issued in 2020, long after Petitioner's conviction became final in 2017. Counsel cannot have been ineffective for failing to raise an unsupported claim. *See also Bentley v. Harvonek*, No. CIV-22-160-C, 2022 WL 1400285, at \*4-5 (W.D. Okla. Mar. 30, 2022) (unpublished) (report and recommendation finding claim of ineffective assistance of appellate counsel to be meritless for failing to raise a Major Crimes Act claim when the petitioner's appeal pre-dated *McGirt*), *report and recommendation adopted by* 2022 WL 1321552 (W.D. Okla. May 3, 2022).

Further, in *Wallace*, the OCCA held that *McGirt*'s holding, and its impact on state criminal jurisdiction in a vastly expanded Indian Country, was a procedural change of law that does not apply retroactively to void convictions already final when the Supreme Court decided *McGirt*. *Wallace*, 497 P.3d at 688, 694. *See also Sanders v. Pettigrew*, No. CIV 20-350-RAW-KEW, 2021 WL 3291792, at \*5 (E.D. Okla. Aug. 2, 2021) (concluding that *McGirt* "did not break any new ground" or "recognize a new constitutional right, much less a retroactive one"). In the present case, Petitioner's convictions were final well before the Supreme Court issued its *McGirt* ruling in 2020. Based on this, this Court concludes there was not a reasonable probability that raising this issue on appeal would have resulted in Petitioner's ultimately obtaining appellate relief. Accordingly, Petitioner's third ground for relief based on appellate counsel's failure to challenge the state court's jurisdiction must be denied.

**Certificate of Appealability**

The Court further finds Petitioner has failed to make a "substantial showing of the denial of a constitutional right," as required by 28 U.S.C. § 2253(c)(2).  In addition, he has not shown "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether [this] court was correct in its procedural ruling."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Therefore, a certificate of appealability cannot be issued.

**ACCORDINGLY**, Petitioner's petition for a writ of habeas corpus (Dkt. 1) is denied, and he is denied a certificate of appealability.

**IT IS SO ORDERED** this 2nd day of January 2025.


_____
RONALD A. WHITE
UNITED STATES DISTRICT JUDGE